## KITCHEN and Wife *v.* COFFYN.

*A.* being the owner of a tract of land under mortgage, agreed, by title bonds, to convey a part of it to *B.* and the residue to *C.*, with the agreement that *C.*, with the consent of the mortgagee, might apply the purchase-money to the discharge of the mortgage on his part. The mortgagee having assented, *B.*, with the fraudulent purpose of getting his part of the land also released from the mortgage, as a part of the land purchased by *C.*, arranged with *A.* and *C.* that *A.* should convey the entire tract to *C.*, that *C.*, upon paying the purchase-money for his part of the

premises, should fraudulently procure a release by the mortgagee of the
whole of the premises, and then convey to B. the part of the premises
which A. had agreed to convey to him.   C. having fraudulently procured
the release of the whole premises upon the payment to the mortgagee of
the purchase-money for his part, and having refused to convey to B. as
he had agreed, B. filed his bill for a specific performance.   *Held*, that
the bill would not lie.

Nov. Term,<br>
1853.<br>
KITCHEN<br>
v.<br>
COFFYN.

APPEAL from the *Decatur* Circuit Court.

*Monday,*<br>
*December* 12.

PERKINS, J.—Bill in chancery to obtain an injunction
restraining proceedings in an ejectment suit, and to ob-
tain a conveyance of land.    Decree below for the plaintiff.

The bill states that one *Elisha Stout* was the owner of
a certain tract of land; that said land was mortgaged to
*Carlisle*, of *Cincinnati, Ohio*, for a fraction less than 2,100
dollars; that said *Stout* sold a certain parcel of said mort-
gaged premises to said *Coffyn*, receiving therefor the full
consideration; that he sold a certain other parcel of said
mortgaged premises to *Kitchen*, one of the defendants to
the bill, for the consideration of 1,800 dollars, which sum
*Kitchen* was to pay to *Carlisle* on his mortgage, said *Car-
lisle* agreeing, on said sum being paid, to release the por-
tion of the premises purchased by *Kitchen* from the ope-
ration of the mortgage.    We will now quote from the
bill:

"Your orator further shows unto your honors that some
short time after the making of said title-bond as last
aforesaid, said *Kitchen* made an arrangement with said
*Carlisle*, in relation to said mortgage given by said *Stout*
to him, said *Carlisle*, the precise terms and stipulations
of which are unknown to your orator, by which it was
agreed by and between said *Kitchen* and said *Carlisle*, that
said *Carlisle* would release his said mortgage from so
much of said mortgaged premises as said *Stout* had sold
and was about to convey to said *Kitchen*, so as to enable
said *Stout* and wife to convey the same to said *Kitchen*
free and clear from all incumbrance; and the said *Stout*
being also desirous to convey to your orator said tract
[purchased by him of said *Stout* as above stated] free and
clear of all incumbrance, and the same being also in-

cluded in the premises mortgaged to said *Carlisle* as afore-said, and your orator being also desirous to receive such title from said *Stout* and wife, it was therefore agreed by and between said *Kitchen*, *Stout*, and your orator, that said *Stout* and wife should convey the tract sold by said *Stout* to your orator, to said *Kitchen*, together with and in the same deed of conveyance and with said tract so sold to said *Kitchen* as aforesaid, for the purpose of having said tract (that sold to your orator as aforesaid by said *Stout*) also released from said mortgage, and that said *Kitchen* and wife should then immediately re-convey the same to your orator." The bill proceeds to aver, that to carry out the arrangement, *Stout* did convey the land sold to *Coffyn*, as well as that sold to *Kitchen*, to said *Kitchen*, and that *Kitchen* got it all released from the mortgage mentioned, but that he then refused to convey to said *Coffyn*, &c. Without extending the statement, we may say that it appears from the whole bill that the ground of complaint, and the manner in which it arose, are as follows: *Carlisle* had a mortgage of over 2,000 dollars on land of *Stout*. *Coffyn* purchased and paid for a certain portion of that land. *Kitchen* purchased, for 1,800 dollars, a certain other portion of it, but before paying for it, arranged that the purchase-money should go to *Carlisle*, he releasing the premises purchased by said *Kitchen* from the mortgage. The idea occurred to *Coffyn* that it would be wise in him to get his purchase also released; and to accomplish it, he arranged with *Kitchen* and *Stout* that it should be conveyed to *Kitchen* in the same deed that conveyed the part purchased by him, and apparently as composing a part of said *Kitchen's* purchase, so that he might, without paying any additional consideration to *Carlisle*, and by an imposition upon him, get it all released from the mortgage, thus depriving *Carlisle* of his security for the balance left unpaid on his mortgage debt, and giving *Coffyn* a clear title through *Kitchen;* that all this being accomplished, except the conveyance from *Kitchen* to *Coffyn*, said *Kitchen* now refuses to execute the convey-

ance to said *Coffyn* as stipulated, and, hence, the aid of a court of equity is invoked to compel him to do it.

The bill was demurred to below, and the demurrer was overruled.

It is a well settled rule that to entitle a party to the aid of a Court of conscience, he must enter that Court with clean hands, so far as relates to the particular case which he presents to the Court, and in which he prays for aid. In *Creath's* administrator v. *Sims*, 5 How. (U. S.) R. 192, it is said—" The complainant alleges that the obligation to which he had voluntarily became a party, was intentionally made in fraud of the law, and for this reason he prays to be relieved from its fulfillment. This prayer, too, is preferred to a Court of conscience—to a Court which touches nothing that is impure. The condign and appropriate answer to such a prayer from such a tribunal is this: that, however unworthy may have been the conduct of your opponent, you are confessedly in *pari delicto;* you cannot be admitted here to plead your own demerits; precisely, therefore, in the position in which you have placed yourself, in that position we must leave you."

So, in the case before us, *Coffyn* has hazarded his property in a scheme to defraud *Carlisle*, and he must escape from the hazard as best he can, without the aid of a Court of Chancery.

The demurrer to the bill should have been sustained, and the bill dismissed. (1)

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the bill.

*A. Davison*, for the appellants.

*J. S. Scobey*, for the appellee.

(1) DAVISON, J., having been concerned as counsel, was absent.