[No. 6,439.—Department No. 2.]

## BOYD v. BRINCKIN.

CONTRACT — OFFER — ACCEPTANCE — SPECIFIC PERFORMANCE — TRUST.—The Central Pacific Railroad Company issued and distributed a circular, inviting people to settle and make improvements upon its lands, and promising those that should do so, that they should be preferred as purchasers, when the lands should be offered for sale. The defendant settled upon the land in controversy, and filed his application to purchase the same, in the office of the company, as directed by the circular, and made valuable improvements thereon. The company, without notifying the defendant that the price of the lands had been fixed, and without giving him the option to purchase, sold the land to the plaintiff, who took with notice of the defendant's equities. *Held*, in an action of ejectment, wherein the defendant filed a cross-complaint, setting up the above facts, and praying that the plaintiff be compelled to convey to him—that the offer of the company, and the acceptance by the defendant, created a valid contract, and that the plaintiff took the legal title impressed with a trust in favor of the defendant and should be compelled to convey the same to him.

APPEAL from a judgment for the plaintiff, in the Tenth District Court, County of Colusa. KEYSER, J.

*A. L. Hart*, for Appellant.

The facts set out in the answer show a contract between the defendant and the company, and a part performance by the defendant, which is sufficient to induce a Court of Equity to decree a specific performance. (*Peart* vs. *Gilmour*, Dec. term, 1877; 1 Story Eq. Jur. § 376 b.

*W. F. Goad*, and *W. C. Belcher*, for Respondent.

The facts stated in the special defense did not constitute a contract. The proposal of the company could become a contract, capable of specific performance, only when it had been accepted, without unreasonable delay, and in such unequivocal form as to bind the party accepting, and when the acceptance had been communicated to the company. (1 Pars. on Cont. 404; *Eliason* v. *Henshaw*, 4 Wheat. 225; *Tuttle* v. *Love*, 7 John. 470; *Davis* v. *Shields*, 26 Wend. 341; *Carr* v. *Duvall*, 14 Peters, 77; Fry on Spec. Per. § 166.) The defendant did not accept the proposal in such a manner as to bind him to buy the land on the terms proposed, or at all. (*Senter* v. *Davis*, 38 Cal. 450; *Grey* v. *Tubbs*, 43 id. 359; *Weber* v. *Marshall*, 19 id. 447;

*Pearis* v. *Covillaud,* 6 id. 617 ; Fry on Spec. Per. §§ 167–8.)
The agreement as stated, lacks the requisite of mutuality.
(*Hopper* v. *Hopper,* 1 Green C. E. .147 ; *Duvall* v. *Myers,* 2
Md. Ch. 401 ; *Bodine* v. *Glading,* 21 Penn. (9 Harris) 50 ;
*Benedict* v. *Lynch,* 1 Johns. Ch. 370 ; *Marble Co.* v. *Ripley,*
10 Wall. 339 ; Fry on Spec. Per. § 286 and note.)

SHARPSTEIN, J. :

The complaint in this case is in the usual form of complaints
in ejectment. The defendant answered, and by way of cross-
complaint alleged that he was induced to settle upon the land
sued for, by a circular issued and distributed by the Central
Pacific Railroad Company, which invited people to settle and
make improvements upon its lands, promising those who should
do so, that they should be preferred as purchasers when the
lands should be offered for sale. After settling upon the land,
and before the same was offered for sale, defendant filed an ap-
plication to purchase said land, in the office of the company, as
he was directed to do by said circular. He alleges that he has
made improvements on said land of the value of $2,500. The
company in 1875 fixed the price of said land; and soon after-
ward sold and conveyed it to the plaintiff, who at the time
knew that the defendant had settled upon and improved and
was residing on said land, and also knew of the circular issued
by said company, and of the application of defendant to purchase
said land. The defendant did not know that the price of said
land had been fixed, nor that plaintiff had purchased it, until the
month of July, 1877. On or about the first day of January,
1878, the defendant tendered to plaintiff the sum which he paid
for the land, and demanded a deed thereof from him. The
plaintiff refused to accept the tender or to give a deed. Defend-
ant avers his readiness to pay said sum, and brings it into court.
Upon these and the usual formal allegations, he asks that the
plaintiff be compelled to convey said premises to him, defendant.

To this cross-complaint the plaintiff demurred, on the ground
that it did " not state facts sufficient to constitute a defense to
said action, or a cause of action against the plaintiff." The de-
murrer was sustained, and a judgment entered in favor of plaint-
iff, from which the defendant appeals to this Court.

If the allegations of the cross-complaint are sufficient to entitle the defendant to a judgment for specific performance, it was error to sustain the demurrer. Those allegations, as we construe them, are to the effect that the railroad company, being the owner of the land described in the plaintiff's complaint, offered to any one who would settle upon and improve it, to sell it to such person as soon as the company should fix a price upon the same, at the price so fixed. The defendant accepted that offer, by settling upon and improving said land, and he notified the company of his acceptance by filing in its office an application to purchase, as soon as the price should be fixed. If we have here an offer on the one side, and an acceptance on the other, then we have a contract before us which a Court of Equity might decree a specific performance of.

In the brief of counsel for the plaintiff, the position is taken that " the alleged circular was not a contract, but simply an offer." We concur in that view of it; and we likewise concur in the following: " It was at most but a proposal, and could become a contract capable of specific enforcement only when it had been accepted, without unreasonable delay, and in such unequivocal form as to bind the party accepting, and when the acceptance had been communicated to the company."

This proposal was, that the defendant should settle upon and improve the land, and file an application to purchase it, and that as soon as the price of it was fixed, the company would sell it to him at that price. He accepted that offer, by doing all that he could do before the price was fixed. But the price could not be the subject of any future negotiations, because it was agreed that it should be fixed by the company.

We think that the contract in this case belongs to that group which is said to be " created by representations made by one party, and acts done by the other party upon the faith of such representations." (Pomeroy on Contracts, § 69.) "Where an absolute unconditional representation of something to be done in the future is made by one person, in order to accomplish a particular purpose, and the person to whom it is made, relying upon it, does the act by which the intended result is obtained, a contract is thereby concluded between the parties." (Id.)

The objection that the defendant, by his acceptance, did not

bind himself to buy the land upon the terms proposed by the company, does not seem to us to be tenable. His acceptance is evidenced by his settling upon and improving the land, and by filing an application to purchase it. Both by acts and in writing did he manifest such acceptance. If that did not bind him to purchase the land on the terms proposed by the company, we can conceive of no form of acceptance by which he could bind himself to purchase it on those terms.

The objection, that the defendant did not accept the offer of the company within a reasonable time, is based upon what we conceive to be a misconception of the character of the transaction. As we view it, the contract was complete as soon as the defendant settled upon the land and filed his application to purchase it. He was not, by the terms of the contract, to pay for it until the price was fixed by the company. As that was to be done by the company alone, it was the duty of the company to notify him of the fact that it had been done before he could be required to pay, or be held to be in default for not paying the price so fixed. This the company was bound to do by its proposal or representation, in which it is stated that "where two or more applications for the same land were filed, the rights of the several applicants to purchase said land should be adjudicated by the land agent of said company, upon due notice given by the said company to the said several applicants." This land was sold to the plaintiff, and the defendant alleges that he did not know of said sale, or that the plaintiff had applied to purchase it, or that a price had been fixed upon it, until two years after it had been actually conveyed to the plaintiff.

The defendant alleges, that the plaintiff, before and at the time of purchasing, had knowledge of the agreement between the defendant and the railroad company, and of all of the defendant's acts thereunder. If so, the plaintiff took the land impressed with the trust in favor of the defendant, and holds it in trust for the defendant, and can be compelled at the suit of the defendant to specifically perform the agreement of the railroad company, by conveying the land in the same manner and to the same extent as the railroad company would have been liable to do, had it not transferred the legal title, and the plaintiff is the proper party in the suit against whom to demand the conveyance. (Pomeroy on Contracts, § 455.)

In *Pearl* v. *Gilmore*, No. 5,861, in this Court, although no opinion was filed, an inspection of the record satisfies us that all of the questions arising in this case are analogous to those that were before the Court, and must have been considered and passed upon by it in that case; and in affirming the judgment in that case, the Court must have held as we now hold.

Judgment reversed, with directions to the Superior Court to overrule the demurrer of the plaintiff to so much of defendant's answer as is demurred to by said plaintiff.

THORNTON, J., and MYRICK, J., concurred.