74  557
74  565
74  557
129  288
74  557
132   7

[No. 11604.  In Bank. — January 25, 1888.]

THOMAS KELLY, APPELLANT, v. CENTRAL PACIFIC RAILROAD COMPANY, RESPONDENT.  G. W. COLE, INTERVENOR AND RESPONDENT.

SPECIFIC PERFORMANCE— FRAUDULENT MISREPRESENTATIONS—INJURY. — Fraudulent misrepresentations by which the defendant was induced to enter into the contract, and by which third persons would be injured, constitute a defense to a suit for specific performance.

ID. — Fraudulent misrepresentations by which the defendant was induced to enter into the contract constitute a defense to a suit for specific performance, although neither the defendant nor third persons would be injured by the enforcement of the contract.

DISCRETION OF COURT OF EQUITY AS TO SPECIFIC PERFORMANCE. — A court of equity may refuse to specifically enforce a contract which is good at law, and which equity would refuse to cancel.

RIGHT OF PLAINTIFF AS TO THE SPECIFIC THING. — If the plaintiff cannot have the contract enforced, he cannot concern himself with what the defendant does with the property.

APPEAL from a judgment of the Superior Court of Placer County.

The facts are stated in the opinion.

*J. M. Fulweiler*, and *Hart & White*, for Appellant.

The alleged misrepresentations of the plaintiff were not sufficient to defeat the contract, or to prevent its specific performance.  (Kerr on Fraud and Mistake, 73; *Morrison* v. *Lods*, 39 Cal. 381; Story's Eq. Jur., sec. 203; *Board of Commissioners* v. *Younger*, 29 Cal. 172.)

*A. P. Catlin*, and *C. A. & F. P. Tuttle*, for Intervenor and Respondent.

*Hale & Craig*, for Defendant and Respondent.

HAYNE, C. — Action for specific performance of a contract to convey land.

The Central Pacific Railroad Company, being the owner of large tracts of land acquired from the federal govern-

ment, placed the disposition of the same in the hands of one of its officers, called its land agent. The finding in this regard is that: " Said railroad company, for the purpose of disposing of its lands, established a land department and appointed a land agent, who had power to issue and carry into effect the circulars hereinafter copied. Said land agent had full power to appoint subordinate agents, and to distribute to them the work of the land department."

In the exercise of his functions the land agent addressed a circular to the public inviting settlement upon its vacant lands, and stating, among other things, that "settlers and actual occupants who in good faith cultivate and improve lands belonging to either of the companies will *generally* be given preference of purchase at the regular price."

It appears that in the spring of 1881, one Menger, who was then in occupation of the south half of the northeast quarter of section 7, in township 13, range 9 east, Mount Diablo base and meridian, and of an adjoining piece, received the above-mentioned circular, and certain verbal assurances, and after several months sold and conveyed whatever rights he had to one Cole. Before making the purchase, Cole inquired of one Perkins, the deputy of the land agent, " whether, if he bought from Menger, he could get the title of the company" to the said south half of the northeast quarter, and the other land which Menger occupied. And Perkins "then gave him one of said circulars, and informed him that if he moved upon the land and improved it, he could safely buy of said Menger, and that the railroad company would give him the preference to buy the same at such price as it might fix; and said Cole made said purchase under said advice, and moved into said Menger's house immediately upon the purchase. . . . . Said Cole moved upon said land, and continued to reside upon it and make improvements on it, relying upon said

circulars, and what was said to him by said Perkins, believing that he would have the prior right to purchase from said railroad company said land at a price which it might fix." In December, 1881, he filed his application to purchase with the land agent; but no immediate action appears to have been taken thereon.

During all of this time the plaintiff, Kelly, had brought himself within the terms offered by said circular, as to certain adjoining land, but had never done so as to the land in controversy. It sufficiently appears, we think, that Kelly had notice of Cole's equities. For he resided in the vicinity, and it is found that on one occasion he undertook to make an entry upon Cole's possession, and commenced to erect "a small board house" upon the land in controversy; but Cole ordered him off, and he left and moved his house away. He therefore knew that Cole had a claim to the land, and by inquiry he could easily have learned the nature of such claim.

Several weeks after this Kelly filed with the land agent an application to purchase certain lands, including the tract in controversy, and represented to the land agent that he, Kelly, had settled upon the same. The land agent, believing these representations, entered into a contract with Kelly for the conveyance to him of this and other tracts, and received from him the first payment therefor. These representations of Kelly were entirely false. The finding in this regard is as follows: "Kelly's said representations, made by himself and his witnesses to the land agent, were untrue, and *he at the time knew that they were untrue*, and they deceived the land agent, and induced him to award to said Kelly said south half of the northeast quarter; and the land agent, but for such deception, would not have awarded said south half of the northeast quarter to said Kelly, but would have awarded it to said Cole."

Upon becoming aware of the deception which had

been practiced upon him, the land agent notified Kelly
that he could not have the tract in controversy, and
tendered him back the portion of his first payment
which applied to that tract, but did not tender him back
the money applying to the other lands mentioned in
his contract. Kelly refused to receive the money, and
brought this action to compel the conveyance to him of
all the land mentioned in the contract. Cole intervened
and prayed for the conveyance of the land in contro-
versy to him. The court below decreed that the land
be conveyed to Cole, and Kelly appeals. The evidence
is not brought up,—the appeal being from the judg-
ment, and upon the judgment roll alone.

The point made on Kelly's appeal is, that the false
representation was not productive of injury to the rail-
road company. And the argument is that there was no
injury, because, in the first place, it was under no obli-
gation to convey to Cole,— the promise contained in the
circular being merely that "preference will *generally* be
given to settlers," in which respect it differs from the
promise contained in the circular considered in *Boyd* v.
*Brinckin,* 55 Cal. 427; and because, in the second place,
the company was willing to convey and will convey the
land to Cole for the same price that it agreed to convey
it to Kelly, and hence could not be injured pecuniarily.

It is deserving of serious consideration whether, ad-
mitting that *Boyd* v. *Brinckin* can be distinguished as
contended, there was not sufficient part performance of
the oral promise to Cole to take the case out of the stat-
ute of frauds and entitle him to a specific performance.
But waiving this, we think there are two answers to the
argument for the appellant.

1. Assuming the correctness of appellant's major pro-
position,—viz., that in order to defeat a suit for specific
performance on the ground of fraud, the fraud must be
productive of injury,—it is not necessary that the injury
should result *to the vendor.* It is sufficient if it would

result to third persons.   It is upon this principle that
the relief is refused where the thing to be done would
operate as a fraud upon the public.   Thus a court will
refuse to decree specific performance of an agreement to
publish a book purporting to be written by one person,
but in fact written by another.   (*Post* v. *Marsh*, L. R. 16
Ch. D. 406.)   So upon the same principle the relief is
refused where the agreement was in fraud of the rights
of creditors (*St. John* v. *Benedict*, 6 John Ch. 117; *Bald-
win* v. *Campfield*, 8 N. J. Eq. 600; *Ryan* v. *Ryan*, 97 Ill.
40), or in fraud of the rights of other parties.   (*Kitchen*
v. *Coffyn*, 4 Ind. 507.)   So it is refused where the act
sought to be enforced would operate to the injury of in-
terests in remainder (Fry on Specific Performance, p.
*141, sec. 304; *Thomas* v. *Dering*, 1 Keen, *747, 748);
or to a wife's right in a homestead (*Phillips* v. *Stauch*, 20
Mich. 383); or to subsequent purchasers from the same
vendor.   (*Curran* v. *Holyoke*, 116 Mass. 90; and see
Pomeroy on Specific Performance, sec. 181.)   The court
will not make itself an instrument to carry out the fraud,
whether the person to be injured be a party to the con-
tract or not.   It will not assist the plaintiff to get the
benefit of the intervenor's labor and improvements upon
the tract in controversy.

2.  But we do not think that in order to defeat a suit
for the specific performance of a contract to convey land,
upon the ground of fraud, the fraud must be productive
of damage either to the vendor or to third persons.   If
the misrepresentation was intentional, and made for the
purpose of deceiving the vendor, and the vendor relies
upon it, and was deceived by it, and would not have
entered into the contract but for the fact that he was so de-
ceived, then we think a court of equity will not enforce
the contract, whether it be accompanied by damage or
not.   So far as this kind of suit is concerned, such a
misrepresentation is material although not accompanied
by damage.

The counsel for the appellant cite in this connection the case of *Morrison* v. *Lods,* 39 Cal. 385, as affirming the contrary doctrine. The report of that case is somewhat obscure. It does not show what the representation was, nor whether it was intentionally false or a mere innocent misrepresentation. But if the court meant to decide that a court of equity will enforce a contract obtained solely through a false and fraudulent representation, then we think the decision is in violation of established principles. It is perfectly true, as stated in the opinion, that an action at law cannot be maintained for fraud unless accompanied by damage. It is also true, as stated in the opinion, that a court of equity will not set aside a contract obtained through fraud unless it be productive of injury. (1 Story's Eq. Jur., sec. 203.) But it is not true that this applies to suits for specific performance. It is well settled that a court of equity may refuse specific performance of a contract which it would not set aside. (*Mortlock* v. *Buller,* 10 Ves. *308; *Cadman* v. *Horner,* 18 Ves. 11; *Seymour* v. *Delancy,* 6 Johns. Ch. *222; *Jackson* v. *Ashton,* 11 Pet. 248; *Barksdale* v. *Payne,* Riley, *178; *Frisby* v. *Ballance,* 4 Scam. 299; *Clement* v. *Reid,* 17 Miss. 542, 543; *Taylor* v. *Merrill,* 55 Ill. 61; Hilliard on Vendors, 445; Fry on Specific Performance, Am. ed., p. *192, sec. 427.)

Although the court will refuse to destroy the contract, it will not further in any way the fraudulent design. In such cases, by an application of the maxim, that he who comes into equity must come with clean hands, the court is enabled to give greater effect to the principles of morality than can be done in ordinary cases. The leading text-writers are agreed in this view. Chancellor Kent, after stating the general rule that fraud must be accompanied by damage, and that "there are many duties that belong to the class of imperfect obligations, which are binding in conscience, but which human laws do not and cannot undertake directly to enforce," goes on to say: " But

where the aid of a court of equity is sought to carry into execution such a contract, then the principles of ethics have a more extensive sway." (2 Kent's Com. 490.) This statement is adopted by Story. (1 Story's Eq. Jur., sec. 206.) So Kerr, in his work on fraud and mistake, says: "Where the aid of a court of equity is sought by way of specific performance of a contract, the principles of ethics have a more extensive sway than where a contract is sought to be rescinded. . . . . Where a party calls for specific performance, he must, as to every part of the transaction, be free from every imputation of fraud or deceit," and "must show that his conduct has been clear, honorable, and fair." (Kerr on Fraud and Mistake, Am. ed., 357, 358.) So Hovenden says: "Specific performance of an agreement is never compelled unless the case is clear of the imputation of any deception; the conduct of the party seeking it must be free from all blame." (2 Hovenden on Fraud, p. 4; see also Fry on Specific Performance, Am. ed., *204.) This rule is embodied in section 3391 of the Civil Code, which provides that: "Specific performance cannot be enforced against a party to a contract. . . . . 3. If his assent was obtained by the misrepresentation, concealment, circumvention, or unfair practices of any party to whom performance would become due," etc.

And it is evident that such must be the rule. To say otherwise is to place suits for specific performance on the same level with actions at law, which is contrary to all the authorities. If, therefore, the case of *Morrison* v. *Lods* is to be construed as affirming any such doctrine, it does not state the law correctly. The case of *Board of Commissioners* v. *Younger*, 29 Cal. 172, was a suit to set aside a contract, and not for specific performance.

In the present case the false and fraudulent representation of plaintiff was the inducing cause of the contract. This is apparent from the fact that as soon as the com-·

pany discovered the fraud which had been practiced upon it, it repudiated the contract. And it is expressly found that "the land agent, but for such deception, would not have awarded said south half of northeast quarter to said Kelly, but would have awarded it to said Cole."

This state of facts well illustrates the wisdom of the doctrine which does not insist upon measuring everything by the standard of damage, but so far as can be done, allows parties to determine what is for their own interests, and to contract or refuse to contract accordingly. It is evident from the circulars contained in the record that it was the policy of the company to encourage the settlement of its vast tracts of unoccupied land. To carry out this policy it offered special inducements to settlers. It ought to be allowed to fulfill its promises to those who have relied upon its good faith. It is not for one who falsely pretends to be entitled to the benefit of those promises to say that it is all the same to the company because he pays the same price as the other would. The case is one where the vendor has special motives for selling to one person at a price which it would not accept from another. (See *dictum* of Lord Eldon in *Bonnett* v. *Sadler*, 14 Ves. *528.)

It may be conceded in favor of appellant that the company did not take the proper course to rescind its contract with the plaintiff. Be that as it may, he cannot, for the reasons stated, have the aid of a court of equity to carry it out. His case against the company, therefore, fails. And this being so, he cannot inquire into the correctness of the decree directing the company to convey to. the intervenor. For if he is not entitled to the specific thing, it is of no consequence to him what becomes of it, and he cannot concern himself with that question. We do not regard the case of *Taylor* v. *C. P. R. R. Co.*, 67 Cal. 615, as conflicting in any degree with the above positions.

We therefore advise that, upon the appeal of the plaintiff, the judgment be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, in the appeal of the plaintiff, the judgment is affirmed.  ·