[Sac. No. 337.    Department Two.—April 9, 1898.]

## G. S. AVILA, Appellant, v. MANUEL PEREIRA, Respondent.

PREFERRED RIGHT TO PURCHASE RAILROAD LANDS—TRUST—ADMINISTRATOR'S SALE—EJECTMENT—EVIDENCE.—In an action of ejectment between claimants under the Central Pacific Railroad Company of lands included within its grant, where it appears that the rules and customs of the railroad company gave a preferred right of purchase to settlers upon the land, and that plaintiff made a contract to purchase the land in controversy with full knowledge that defendant was in possession of the land and of improvements thereon, and that defendant claimed

under an administrator's sale of the rights of a deceased settler upon the land, and also under a prior application to purchase the land made by the administrator in his own name, but for the benefit of the estate, and after he had inventoried it as a part of the estate, such administrator is to be regarded as holding the interest applied for as a trustee in trust for the estate, and the defendant by his purchase succeeded to whatever interest was acquired by the administrator and by the estate, and the plaintiff acquired no superior rights as against the defendant; and it was not error to admit in evidence the probate proceedings through which the defendant claimed the right of possession as against the plaintiff.

Id.—Inchoate Title—Value to be Fixed—Protection of Occupant.— Where the application for the land made by the administrator and the certificate of the land agent, appended thereto, showed that the title of the railroad company was then inchoate, and that the value of the land was to be thereafter fixed, but that the railroad company would not take into account the value of any improvements made by the occupant in fixing the value, etc., the contract looked to a period in the future when the company would fix the price and notify the applicant, and the company could not take away the rights existing under the contract, without first notifying the occupant holding under the contract, and giving such person an option to purchase at the price fixed, where such person was not in default under the terms of the contract.

Id.—Assignment of Contract—Abandonment—Transfer in Course of Administration.—A provision in the contract made with the administrator that "permission to assign the rights acquired under the application will be given if deemed advisable by the land agent, but all assignments made without such permission first having been obtained will be construed to be an abandonment of all rights conferred by the application," does not have the effect to render void the contract by reason of a transfer made in due course of administration of the estate, for which the contract was held in trust; nor can a subsequent applicant to purchase the land who did not contract for it upon the ground of any default on the part of the previous applicant, or of any one holding under him, nor because of the transfer, take advantage of that provision in the prior contract.

APPEAL from a judgment of the Superior Court of Siskiyou County and from an order denying a new trial. Edward Sweeney, Judge.

The facts are stated in the opinion.

Butler & Taylor for Appellant.

J. H. Magoffey, for Respondent.

CHIPMAN, C.—Action to recover possession of certain lands situated in Siskiyou county, title to which was at the commence-

.ment of the action, and still is, admitted to be in the Central Pacific Railroad Company as part of its land grant. .

It appears that the lands in question were improved by the .erection of dwelling-house, barns, fences, a small orchard, and .about thirty acres of alfalfa, and some portions were under cultivation and were in the possession and occupancy of Manuel Cardoza. He died in 1889, and in January, 1890, Joseph Cardoza was appointed administrator of his estate. The land in controversy was returned by Joseph Cardoza in his inventory as belonging to the estate of Manuel Cardoza, deceased. Joseph Cardoza died before closing the administration (but when does not appear), and Thome Cardoza was appointed administrator in his stead. After filing his inventory, to wit, on January 20, 1890, .Joseph Cardoza applied to the railroad company to purchase the land in question. Subsequently, the interest of the estate in the premises was sold by order of the probate court after due proceedings had, and defendant became the purchaser and went into possession under the administrator's deed, and still is in possession. On October 31, 1894, plaintiff applied to the railroad company to purchase the land, and on February 11, 1895, the company, through its land agent, Mr. William H. Mills, entered into a written contract to sell the land in question to plaintiff for the sum of eight hundred and eighty dollars, and received from him the first installment in money and one year's interest on the unpaid balance. Plaintiff claims under this contract, and defendant claims under the application made by Cardoza and his purchase from the Cardoza estate.

1. Appellant contends that the estate of Manuel Cardoza never .acquired any interest in the land, and therefore no interest passed to respondent by the administrator's sale. It is true that Joseph Cardoza made application to purchase in his own name, and the .application nowhere shows that it was for the benefit of the estate. But when he applied to purchase the land he was administrator and was in possession of the land as such administrator, and had included it in his inventory as part of the estate of the intestate. Whether this interest was sold to respondent by Joseph or by Thome as administrator does not appear, but it was .so sold by one of them and before appellant made his application

to purchase. Appellant testified as follows: "At the time I made application I knew Mr. Pereira had those buildings on the land and was in possession of it, raising alfalfa, and had an orchard on it, and had the place fenced. Before I made application I made inquiries to find out what rights Pereira had there." The court found that Joseph and Thome Cardoza had faithfully carried out the terms of the agreement entered into by Joseph with the railroad company; that the company had not prior to the commencement of the action "notified said estate of Manuel Cardoza, deceased, nor the administrator thereof, nor this defendant, that said company had fixed a price on said lands, nor had it ever required this defendant or his predecessors in interest to pay for the same"; that plaintiff applied to the railroad company to purchase the land on October 31, 1894, and was informed in reply "that the company did not receive filings, but that the company's title was for sale to the person best entitled to purchase by reason of cultivation, occupation, and improvements, at a stipulated price"; that subsequently plaintiff made an offer, which was accepted by the company, and it entered into the contract referred to with plaintiff for the sale of the land; "that at all times in this finding mentioned, plaintiff knew that defendant was in the open and notorious possession and occupancy of said land, as evidenced by his buildings, fences, orchard, and alfalfa patch thereon, all of which plaintiff knew defendant was occupying and using, with the exception of the dwelling-house"; "that plaintiff knew that defendant was cultivating said land and raising crops thereon . . . . and knew that defendant was entitled to the preference in purchasing the lands in controversy, by reason of his cultivation, occupation, and improvements of said lands, and that plaintiff willfully and fraudulently concealed all of said facts from the Central Pacific Railroad Company." The court found that the company "has not been entitled to the possession or right to the possession of said land since the twenty-eighth day of February, 1890," and also found against plaintiff as to the right of possession. The court also found that plaintiff, in July, 1895, demanded of the company that it "take the land back and refund him the money he had paid for the same"; that the company agreed to do so and made out and

audited its voucher for the sum paid by plaintiff, but it was not delivered because plaintiff had not his contract with him to be surrendered; but that plaintiff promised to deliver the contract to the company and receive his voucher for said money; and it is in evidence that the railroad company still holds the voucher for appellant, and has informed respondent that the company is now in position to sell the land to respondent. We think it sufficiently appears from the evidence that the contract made by Joseph Cardoza was intended for the benefit of the estate of which he was at the time administrator, and the fact that the contract was in his name and made no mention of the estate did not preclude the court from so finding. Respondent succeeded to whatever interest was acquired by Joseph Cardoza or the estate, and it was not error to admit evidence of the probate proceedings through which respondent claims. Appellant urges that there was no evidence to justify the finding that the company agreed to sell the land to the estate of Manuel Cardoza, deceased. It is true the company did not make any such agreement in terms; its contract was with Joseph Cardoza. But Joseph was a trustee of and held the interest in trust for the estate; it appears from the other findings that the contract was with Joseph for the benefit of the estate. We think the finding complained of was not in conflict with the true meaning of all the findings taken together, and cannot be said to have resulted in a judgment which with or without it would have been different.

2. Appellant contends that all the rights of Joseph or the estate under the contract of 1890 had terminated, and in support of the contention appellant quotes from this contract as follows: "Permission to assign the rights acquired under the application will be given if deemed advisable by the land agent, but all assignments made without such permission first having been obtained will be construed to be an abandonment of all rights conferred by the application." This contention rests upon the proposition that, if there was a sale and assignment of the contract as well as all interest in the land, it resulted in the abandonment of the contract, and appellant had a clear right to purchase.

The court found that all the terms of the contract had been faithfully performed by Cardoza and his successors in interest; and except as to the sale and transfer of all interest in the contract the finding is not disputed and is supported by the evidence. It becomes necessary to state some of the provisions of this contract. It reads in part: "I, Joseph Cardoza, hereby make application to purchase . . . . and it being understood by me that the title of the railroad company in the land is inchoate, and that the value of the land is not appraised, I agree to abide by the appraisement of the value hereafter to be made by the railroad company. . . . . I hereby declare that I intend eventually in good faith to occupy, improve, and cultivate all the land covered by this application; and therefore agree that my right to purchase any part thereof shall be made dependent upon my willingness to purchase all the land hereby applied for." Appended to this application is a clause signed by the land agent, Mr. Mills, which contains, among other provisions, the following: "Whereas the title to the above-described land is inchoate and its value is not fixed, now, therefore, it is understood that if upon final trial of all contests which may arise concerning the prior right of purchase, the above applicant is found to be entitled to purchase the above-described land by reason of having performed all covenants entered into by him, the railroad company will not take into account the value of any improvements made by the applicant in fixing the value of the land . . . . at the time when the purchase money or the first installment thereof is paid." Appended to the contract are certain instructions signed by the land agent and forming part of the application. Among the provisions is the following: "If the applicant does not enter upon the land within the time specified, no second application from the same parties for the same land will be received. In the event of such failure, the land will be open to a second applicant." "Rule—The improvement of twenty acres shall be deemed good as to an application for eighty acres. The improvement of forty acres shall be deemed to hold one hundred and sixty acres," etc. It is plain from these and other provisions which might be quoted that the company desired to encourage by these contracts the settlement and cultivation of

its lands, and to give to actual settlers and occupants in good faith, who cultivated and improved the land, a preferred right to purchase. It was not intended to take advantage of betterments added by the applicant, but to recognize his right to make them with the assurance that it would not increase the value of the land, and this provision was necessary because the price could not at that time be fixed. The contract clearly looked to a period in the future when the company would fix the price and notify the applicant, and until that time the application should hold the land. Applications were required to be in duplicate—one of which presumably was for the applicant and one for the company. Appellant testified, as we have seen, that before he applied to purchase he made inquiries to find out what rights respondent had in the land, and he must be held to have learned the fact that respondent claimed under the Cardoza application. We think the company could not take away the rights under the Cardoza contract without first notifying the occupant of the land holding under that contract and giving such occupant the option to purchase at the price fixed, unless such person was in default, or his predecessor had been in default, and there is no pretense here that there was any default except in the one fact alone that the estate sold and transferred its interest in the land and agreement. We do not think that the transfer here made in due course of administration, and to obtain money to pay expenses of administration, was such assignment as rendered the contract void; and, furthermore, we do not think appellant is in a position to take advantage of that provision of the contract. It does not appear that the company contracted to sell the land to appellant because of any default on the part of Cardoza, or anyone holding under him, nor because of the transfer. It does not appear that the company knew that the land was occupied and being cultivated and improved by Cardoza and his successors in interest, but it does appear that appellant had full knowledge of all the facts and failed to make them known to the company. As against respondent he acquired no superior rights.

The case of *Boyd v. Brinckin*, 55 Cal. 427, is closely analogous to the one before us in both its facts and the principles of law

involved, and is authority for the judgment of the learned judge in the present case. The other points made in appellant's brief are more or less dependent upon those already noticed and call for no special remark.

It is advised that the judgment and order be affirmed.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.