[No. 4625.   Decided September 18, 1903.]

E. May MacKenzie, *Appellant,* v. The State of Washington, *Respondent.*

SCHOOLS AND SCHOOL DISTRICTS — RE-ELECTION OF TEACHERS — ACCEPTANCE — DISCHARGE.

Where a teacher is re-elected for the ensuing year, and thereafter expresses her gratification to the secretary of the board that she is to have her same work, and during vacation consults with the principal, at his request, in regard to her proposed work, acceptance on her part is sufficiently shown, and the dispensing with her services subsequently upon abolishing the line of work she had conducted, without giving her an opportunity to accept or refuse other work in the school, amounts to a breach of the contract.

SAME.

The acceptance of an offer to teach conveyed by a re-election of a teacher is established by her conference during vacation with the newly elected principal concerning the character of her work for the ensuing year, and a resolution of the board annulling her employment on the ground that it would not be for the best interests of the school amounts to a breach of contract.

NORMAL SCHOOLS — TEACHERS — CERTIFICATES OF QUALIFICATION — NECESSITY.

The certification of qualification of teachers of "higher and special institutions" not being required under that portion of the "Code of Public Instruction" (Laws 1897, title 4, p. 427) devoted to such institutions, but it being the evident intent of the law that such certification shall apply only to teachers under the common-school system, one would not be incapable of entering into a contract to teach in one of the normal schools of the state by reason of not holding a teacher's certificate.

Appeal from Superior Court, Thurston County.—Hon. Oliver V. Linn, Judge.   Reversed.

*Graves & Graves,* for appellant.

*W. B. Stratton,* Attorney General, and *E. W. Ross,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—Appellant brought this suit against respondent, and set up in her complaint two causes of action. The first avers that on or about June 21, 1900, appellant was employed by the board of trustees of the state normal school at Cheney, Washington, as a teacher in said school for the period of one year, at the rate of $500 per year; that thereafter, without excuse, the said board of trustees refused to carry out their said contract, or to pay appellant any salary on account of such employment; that appellant was unable to obtain other employment of a like character, and by such breach of contract she has been damaged in the sum of $500. For a second cause of action the complaint alleges that about the same date one Rose R. Turner was employed by said board as a teacher in said school for the period of one year at $1,000 per year; that thereafter the board, without excuse, refused to carry out said contract, or to pay Mrs. Turner any portion of the contract price on account of said employment; that Mrs. Turner was unable to secure other employment of like character for that year, and that by the breach of said contract she was damaged in the sum of $1,000; that prior to the commencement of this action Mrs. Turner and her husband, by assignment in writing, transferred her cause of action arising from the foregoing facts to appellant. Judgment is demanded upon the two causes of action for $1,500. The answer avers, with reference to the first cause of action, that at the time stated in the complaint the board of trustees, believing appellant to be duly qualified as a teacher to teach in the schools of the state of Washington, elected her as a member of the corps of teachers in said normal school, but that appellant never in any way signified her accept-

ance of said election, and she did not agree to teach in said school; that prior to the opening of said school for the year beginning in September, 1900, all teachers employed in the school were, by order of the board, placed under the supervision and control of a principal; that appellant was, by said principal, assigned to the position of assistant in the training department, but that she refused to accept said assignment, and thereafter the board dispensed with her services, and rescinded such election. It is also alleged that appellant was neither qualified to teach in the public schools of the state nor to undertake employment as a teacher in said normal school.    Referring to the second cause of action, the answer contains similar averments as to the election of Mrs. Turner, and as to her failure to signify her acceptance of said election. Her qualification as a teacher in the public schools of the state and in said normal school is not made an issue, but it is averred that she refused to assent that her work as a teacher should be subject to the supervision or control of the principal, or that she would comply with the rules and regulations adopted by the board for the management of the school and for the control of the teachers employed therein; that thereafter the board dispensed with her services, and rescinded her said election.    The reply admits the allegations as to the election and rescission of the election of the two teachers, and denies all other affirmative averments of the answer.    The cause was tried by the court without a jury, and resulted in a judgment that the plaintiff shall take nothing by her action, and that the defendant shall recover costs.    The plaintiff has appealed.

It is assigned that the court erred in finding that neither the appellant nor Mrs. Turner accepted her election as

teacher, and that they did not agree to teach in said school. Respondent urges that the action of the trustees was no more than an offer to employ; that such offer was never accepted and therefore no contract was completed. These ladies had been teaching in the school the previous year, and the record of the board of trustees dated June 21, 1900, shows the following: "By motion the following teachers were elected: . . . E. May MacKenzie at $500 per year; Mrs. R. R. Turner, at $1,000 per year; . . ." There is evidence to the effect that it was not usual for formal applications to be made to the board for re-election, but that such were made in the cases of first elections only, and that members of the corps of teachers for a previous year were understood to be applicants for re-election without any formal application therefor. Appellant and her assignor both appear to have acted upon such understanding, and appellant urges that, with the applications thus understood, the election completed the contract. Whether this rule was sufficiently well established so that the election could be treated as an acceptance of a standing application in the absence of any notice of its withdrawal from one already a teacher in the school, we do not find it necessary to decide, since, if we assume respondent's position that an election is in no instance more than a mere offer of employment, we think there is sufficient evidence in this case to show that the offer was accepted by both appellant and her assignor. The election occurred about the close of the school year of 1899-1900. Both of these teachers were immediately notified by the secretary of the board of their election. Appellant at the time said to him that she was glad she was "to have the same work," thus indicating her acceptance and her understanding was that she was to have the

same class of work which had been assigned to her the previous year. The secretary did not inform her of any proposed change in her work. She had previously had charge of the kindergarten department. During the summer vacation, at the request of the newly elected principal, she consulted with him with reference to plans for the coming year's work. He expressed a desire that she might give a portion of her time to the training department. He asked her to think the matter over, and let him know what she thought about it. After a time she addressed a communication to the principal, in which she expressed the view that she could not undertake the proposed work in the training department. She, however, clearly understood that this work was to be in addition to the regular kindergarten work, and she believed she could not do both. During a previous year she had carried the work of the two, but had thereafter, at her own request, been assigned to the kindergarten work only, at a reduced salary. After the receipt of this note from appellant, the kindergarten department was, on the advice of the new principal, abolished, and appellant was notified that her services were not wanted. She was not given the alternative of teaching in the training department or not at all, and it is clear she did not understand that such a course was desired. When she was first elected and signified her assent thereto, it is true she thought she would have the same work as during the previous year, but she was given no opportunity to do or refuse to do training school work after she was informed that the department of her previous work was to be abolished. She was thus formally elected by the board as a teacher for the ensuing year, and she at once expressed her assent thereto, and afterwards conferred with the principal about the work.

No definite understanding as to the scope of her work was then decided upon, but it was discussed with the understanding that the line of her previous work was at least to be carried by her. The conference between her and the principal did not amount to a positive assignment of training school work to her. It was simply left for her to think over as a possible assignment in connection with her other work. The evidence does not show a refusal upon her part to do work positively assigned to her. The respondent contends that she was not elected to do any specific work, but simply as a teacher to receive her assignment from the principal. That being true, when she expressed herself as glad that she was elected, and afterwards entered into conference with the principal concerning her work, we think her conduct amounted to an acceptance of the election. Since she never refused to do the work of a positive assignment, there was no breach upon her part. If, in rescinding her election, the board of trustees shall be held to speak by their record only, then no question of refusal to work as directed was considered. The record upon that subject is as follows:

"Resolved: That on advice of Principal Miller the kindergarten department be discontinued and the services of Miss E. May MacKenzie be dispensed with, and that the secretary be directed to notify Miss MacKenzie of this action."

Thus it will be seen that the only reason given was the discontinuance of the kindergarten department. The resolution itself, we think, recognizes the existence of the contractual relation, and the reason assigned was not sufficient excuse for rescinding an election regularly made and afterwards acted upon by appellant. If appellant had, at the time of her election, been specially assigned to kindergarten work, the resolution would have been a

breach of the contract; and since, upon respondent's own theory, she was not so assigned, but was elected generally for any work that should be assigned to her, then by so much more was it a breach to dispense with her services, for the simple reason that the kindergarten work was to be abandoned.  The resolution was passed more than two months after the election, and at a time when the schools of the state were about to re-open for a new year's work, with their teaching force already employed.  Appellant, relying upon her said election, had not sought other employment.  At the beginning of the school year she presented herself ready to do any work that should be assigned to her, but was informed that her services were not desired.  She afterwards made reasonable effort to procure other employment, but without success, and we believe she is entitled to recover upon her first cause of action, unless prevented by her own disqualification as a teacher, which subject will be hereinafter discussed.

Turning now to the second cause of action based upon the assigned claim of Mrs. Turner, we find that some time after her election, at the request of the new principal, Mrs. Turner conferred with him about her work for the ensuing year.  She had theretofore been in charge of the training department, and the conference was to the effect that she was to continue with the same class of work.  She was asked about former methods and the program followed by her, and the principal suggested some changes which he desired.  She did not express approval or disapproval of the proposed changes, and says that she fully intended to adopt them at the request of the principal, although she did not in fact believe they were an improvement upon the previous plans and methods.  By this conference and consideration of plans for the future work, with no

refusal upon her part to adopt the proposed plans, we think her acceptance of the election made by the board was manifest. Some time after the conference, the new principal, having conceived the idea that she might not work harmoniously with him, so reported to the board of trustees. Thereupon, on August 28—only a few days before the school year was to begin—and at a time when the teaching force throughout the state had been generally employed, the board passed the following resolution:

"Whereas, on the 21st day of June, 1900, Mrs. Rose Rice Turner was employed by this board as principal of the training school for the year following; and

"Whereas, since said employment this board has become convinced that the retention of said Rose Rice Turner would be prejudicial to the best interests of the school;

"Then, it is resolved that said employment is hereby annulled and vacated and said teacher discharged therefrom and said position is hereby declared vacant."

The language of the above resolution, it seems to us, clearly recognizes that a contractual relation already existed with Mrs. Turner, and we think respondent should not now be heard to say that such was not the fact. In any event, her previous election and her subsequent ratification thereof by her conduct as aforesaid established such relation. Having, by her conduct, thus led the board of trustees to understand that she had accepted her election, she could have been compelled to perform or respond in damages. She also presented herself ready for work at the beginning of the school year, and was denied an assignment. We think there was a breach of contract on the part of the respondent. Mrs. Turner also made reasonable effort to procure other employment, but, for reasons already stated, was unable to succeed. We therefore think appellant is entitled to recover upon her second cause of action.

If the election of these teachers should be regarded as a mere offer to contract upon respondent's theory, it is nevertheless true that an acceptance of an offer need not necessarily be made in words, but may be inferred from one's acts.

"The proposal or acceptance of an agreement may be communicated by words or by conduct, or partly by the one and partly by the other. In so far as a proposal or acceptance is conveyed by words, it is said to be express. In so far as it is conveyed by conduct, it is said to be tacit. It would be as difficult as it is needless to adduce distinct authority for this statement. Cases are of constant occurrence, and naturally in small matters rather than in great ones, where the proposal, or the acceptance, or both, are signified not by words but by acts. For example, the passenger who steps into a ferryboat thereby requests the ferryman to take him over for the usual fare, and the ferryman accepts this proposal by putting off." Pollock, Principles of Contract (Dickson ), *pp. 9, 10.

"The acceptance of an offer may be indicated by the acts of the party to whom it is made. In such a case, however, the acts should be regarded as *evidence* of the mental assent essential to the conclusion of a contract, rather than as *constituting* the assent itself." Pomeroy Contracts (2d ed.), § 66.

A railroad company published a circular inviting persons to settle and make improvements upon its lands, promising those who should do so a preference right to purchase when the lands should be offered for sale. It was held that this was an offer to sell, which was accepted when one settled upon and improved the land. *Boyd v. Brinckin,* 55 Cal. 427.

It is true the settler afterwards filed a written application to purchase, but the essential act of acceptance was the settling upon and improvement of the land. In the case at bar the elected teachers could not at once, by mere

conduct, accept by actually entering upon the performance of the contract, for that time had not arrived. But their acceptance was manifest as far as conduct could well have shown it, since they readily conferred with the principal at length and in detail about plans for their work. That fact was reported by him to the board, and the latter must thereby have understood that the ladies had accepted their election, and were relying thereon for their next year's employment. This was followed, moreover, by the tender of their services when the time for actual performance came.

It is, however, urged by respondent that appellant cannot, in any event, recover upon her first cause of action, for the reason that she was incapable of entering into a contract, because she held no certificate of qualification as is required of teachers in the common schools. In 1897 the legislature adopted what it denominated the "Code of Public Instruction of the State of Washington." Laws 1897, p. 356 *et seq.* The act is subdivided into titles and chapters, each dealing with a distinct branch of the general subject of schools and education. Under Title 3, at page 384 *et seq.*, "The Common School System" is treated. Chapter 9 under said title, beginning at page 412, treats of the "Certification of Teachers." Title 4 at page 427 *et seq.*, treats of "Higher and Special Institutions." This title is subdivided into chapters relating respectively to state university, agricultural college, normal schools, and school for defective youth. In none of these chapters, and at no place under this title, is any provision made for the certification of teachers, as in the case of the common schools. The general management of these schools, including the selection of teachers, is lodged with the boards of regents and trustees. No provision

being made for the certification of teachers, it would seem to have been intended that the several boards are to be the judges of the qualifications of the teachers they shall employ. In the cases of all these institutions, except possibly the school for defective youth, it is well understood that the necessary qualifications for teachers are much in advance of those required for common school work, and it follows that the ordinary test of fitness for common school teaching is not a sufficient one for the advanced schools. This may account for the fact that the legislature has not made the common school method of certification applicable to the higher institutions. It was evidently deemed wiser to leave the governing boards of these institutions to satisfy themselves as to the qualifications of these advanced teachers by other and more assuring methods than by examinations and certificates. Respondent refers us to § 51 under chapter 8 of title 2 of the act of 1897. This is found on page 380 of the Session Laws of said year. The title subject is "Officers; their Powers and Duties." The chapter subdivision is entitled "Teachers." The section is as follows:

"No person shall be accounted as a qualified teacher, within the meaning of the school law, who has not first received a certificate issued by the superintendent of public instruction, or who has not a state certificate or life diploma from the state board of education, or who has not a temporary certificate or a special certificate granted by the county superintendent according to law: *Provided,* That nothing in this section shall be construed as invalidating any certificate in force at the time of its passage, but the same shall remain in force for the period for which each was issued."

It is true this section does not appear in that portion of the act relating specifically to the common-school system; but when construed with reference to the whole act, we

think it can be held to apply to those teachers only for whom regulations are by law clearly established for examination as preliminary to holding the certificates mentioned in the section quoted. The regulation for such examination, as we have already said, we think is limited by the terms of the act to teachers under the common-school system. We conclude, therefore, that appellant was not incapable of contracting to teach in one of the normal schools of the state by reason of not holding a certificate.

The judgment is reversed, and the cause remanded, with instructions to the lower court to enter judgment for appellant upon both causes of action.

MOUNT, DUNBAR and ANDERS, JJ., concur.