## THE BOARD OF SUPERVISORS OF DOUGLAS COUNTY VS. WAL-BRIDGE and others, imp.

EQUITY.   (1) *Necessary parties to suit in equity.*   (2) *Joinder of causes of action.*

PLEADING.   (4) *Right to equitable relief.   Multifariousness.   Parties.*

COUNTY BOARD OF SUPERVISORS:   (3) *Cannot modify contract for aid to a railroad company accepted by vote of the people.*

1. In general, one who will be directly affected by a decree in equity, is a necessary party to the suit; and this rule is departed from only when the parties are so numerous that compliance with it would be impossible or inconvenient.

2. Where the grounds of action averred against several defendants to a suit in equity arise out of the same transaction or series of transactions forming one course of dealing, and all tending to one end, the bill is not multifarious.

3. Where a proposition for county aid to a railroad upon stipulated conditions has been submitted to the electors of the county and approved by their vote (under acts like ch. 326, P. & L. Laws of 1870), such conditions cannot afterwards be essentially modified by any agreement between the railroad company and the board of county supervisors.

4. A county, under authority conferred by statute, voted a subscription of $350,000 to the capital stock of a railroad company upon certain conditions specified in an agreement previously made between the company and the county board of supervisors; one of such conditions, which formed the chief object of the electors in voting such aid, being the speedy completion of a railroad connecting their county with the Northern Pacific Railroad. Upon the issue of the bonds, they were transferred by the railroad company to certain of its directors as contractors, who assumed to perform the conditions on which the subscription was voted, but, soon after receiving the bonds, discharged their workmen, and abandoned the construction of the road, without having completed a mile of it. Subsequently an agreement was made between such company, the contractors aforesaid, and the Northern Pacific Railroad Company, by which the contractors, in consideration of the work they had done upon the road and the surrender of certain property (the total value of both not exceeding $10,000), were to retain $75,000 of the bonds, turning over the remainder to a trustee selected by the parties, to be disposed of from time to time in specified methods for the construction and equipment

of the road by the last named company; or, in default of the completion of the road by a time certain, to be delivered up to the county to be canceled. To this agreement the board of supervisors gave their assent by resolution, which also extended the time for the completion of the road two years beyond that specified in the original agreement voted on by the electors. Afterward, however, upon being advised that their action was without authority, said board offered to deliver up the certificates of stock issued to the county, and demanded the return of their bonds, which was refused. The Northern Pacific Railroad Company became soon after entirely insolvent; the company to which aid was subscribed had no property of value; and the county had no security for the completion of the road, except a bond, in the sum of $200,000, given by said railroad company as principal, with the contractors above referred to as sureties. In this action by the board of county supervisors against the two railroad companies, the contractors and the trustee, the complaint alleges these facts, and demands judgment: 1. That the original contract between the county and the railroad company be rescinded. 2. That said company and the trustee deliver up the bonds held by the latter, for cancellation, and that said trustee be enjoined from selling or parting with the possession of such bonds or the attached coupons until the further order of the court. 3. That the said company and the contractors deliver up the $75,000 of bonds held by the last named parties; or, in default thereof, pay to the plaintiffs the sum of $75,000 with interest. 4. That the tripartite agreement above referred to be rescinded. *Held*, upon demurrer,

(1) That plaintiffs have no adequate remedy by an action for damages, and a proper case is shown for the equitable relief sought.

(2) That the contracting directors (as well as the two railroad companies and the trustee) are interested in the question of rescinding the original contract under which the bonds were issued, and are proper (if not necessary) parties to the action for that reason; and that they are necessary parties to the action so far as it seeks to have declared void the tripartite agreement referred to; and the complaint is not bad for multifariousness.

APPEAL from the Circuit Court for *Dane* County.

This action was brought by the *Board of Supervisors of Douglas County* against *Horace S. Walbridge and others*, constituting the firm of Walbridge Bros. & Sargeant, the Superior & St. Croix Railroad Company, the Northern Pacific Railroad Company and the First National Bank of Madison. The fol-

lowing statement of the facts alleged in the complaint is taken from the opinion as originally prepared by Mr. Justice COLE; a few additional statements, inserted by the reporter, being enclosed in brackets.

"It appears that in October, 1871, the board of supervisors of Douglas county entered into an arrangement with the Superior & St. Croix Railroad Company to subscribe $350,000 to the capital stock of the company, and to pay for the same in the bonds of the county. The terms and conditions of the arrangement were submitted to the electors of the county, who voted to grant the aid proposed, under the authority conferred by ch. 326, P. & L. Laws of 1870. The complaint states that the chief object which the electors of the county had in view in voting aid was to secure the speedy completion of a railroad from the bay of Superior to a connection with the Northern Pacific Railway, in Carlton county, Minnesota. According to one of the stipulations in the arrangement upon which aid was voted, the Superior & St. Croix Company agreed, by the 1st of July, 1873, to complete and operate a good and substantial railroad from the bay of Superior westerly to the Minnesota state line, and from thence so as to connect with the Northern Pacific at some practicable and convenient point in the county of Carlton, so as to make a continuous railway from the bay of Superior to the Northern Pacific; and by another stipulation the said company agreed to place upon the railway thus constructed two first class locomotives and forty platform cars on or before the first day of January, 1873. A further stipulation was, that before the bonds of the county should be delivered, not less than $350,000 in addition to the subscription then existing to the stock of said company, and to the amount to be subscribed by the county, should be subscribed by good and responsible parties; and that the company as principal, and the defendants *Walbridge Bros. & Sargeant* as sureties, should execute to the county a bond in the penal sum of $200,000, conditioned for the performance of the arrangement on the part of the com-

pany.    These stipulations were entered into by the company, and the indemnifying bond given with the required sureties; [and $350,000 of bonds of the county were executed and delivered to the railway company in March, 1872.]    It further appears that prior to the time when aid was voted by the county, *Walbridge Bros. & Sargeant* had entered into a contract with the Superior & St. Croix Company, by which they agreed to build and put in operation by July 1, 1873, a substantial railroad from the bay of Superior to the Northern Pacific in Carlton county, and to place on the same by the first of January, 1873, two locomotives and forty platform cars for the consideration specified, which included the $350,000 in the bonds of the plaintiff county.    It was a part of this arrangement, that $200,000 of these bonds should pass immediately into the hands of the firm of *Walbridge Bros. & Sargeant.*    The complaint states [that $200,000 of the bonds were accordingly paid to *Walbridge Bros. & Sargeant* at or about the time they were received by the company]; that prior to May, 1872, a small amount of work was done by *Walbridge Bros. & Sargeant* in grubbing and clearing a portion of the line, and beginning the excavation of some of the cuts, and getting out some ties; that within about a month after the bonds of the county were delivered to them, they discharged all their hands and stopped all work in the construction of the proposed road, and never afterwards resumed work thereon, but abandoned the construction of the road entirely; that the little work done upon said road is of no possible use to the county or its inhabitants; and that not a mile of road has been completed, nor a single car or locomotive furnished.    In June, 1873, the county board passed a resolution extending the time for the completion of the road for two years from the first of July, 1873, and assenting to a certain agreement of June 26, 1873, between the Superior & St. Croix and Northern Pacific railway companies and *Walbridge Bros. & Sargeant.*    By this latter agreement, *Walbridge Bros. & Sergeant* turned over to the Northern Pacific Railroad

Company all their interest in the contract made by them with the Superior & St. Croix Railroad Company for the construction of the road, and received the $75,000 bonds of the county as payment for the work they had performed, the materials furnished, and tools and implements used by them in the construction of the road under their contract. They were also released from all liability upon the bond which they had executed to the county as sureties for the Superior & St. Croix Railroad Company. They likewise surrendered their certificates of stock in the later company, and deposited with the First National Bank of Madison, as trustee, the remaining $275,000 of bonds, which were to be held by such trustee, and to be disposed of in a certain manner specified in the agreement, for the benefit of both the Northern Pacific Railway Company and the Superior & St. Croix Railway Company, as the proposed road should be completed and equipped."

It further appears that by the terms of said agreement the Northern Pacific Railroad Company was to construct and equip said road by July 1, 1875, but that in fact no part of the same has been constructed or equipped; and it is averred that said company is insolvent, and that the Superior and St. Croix Railroad Company has no property of any considerable value.

The objects of the action were, 1. To rescind the contract between the plaintiff and the Superior & St. Croix Railroad Company for the issue of bonds of the county in exchange for stock of the company. 2. To cancel the $275,000 of bonds deposited in trust with the Bank of Madison, as above stated; and a temporary injunction is asked restraining the bank from parting with the bonds or the attached coupons. 3. To obtain for cancellation the $75,000 of bonds retained by *Walbridge Bros. & Sargeant*, or, in default thereof, to recover judgment for their amount against said firm and the Superior & St. Croix Railroad Company. 4. To have the tripartite agreement of June 26, 1873, adjudged void.

*Walbridge Bros. & Sargeant* demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action against them or either of them, and also on the ground that several causes of action were improperly joined; and they appealed from an order overruling their demurrer.

*Sloan, Stevens & Morris,* for appellants:

1. There is a misjoinder of causes of action. (1) When the $275,000 of bonds were delivered up, upon the execution of the tripartite agreement, *Walbridge Bros. & Sargeant* ceased to have any further interest in them, and cannot properly be dragged into a litigation respecting them. None of the defendants, except the Superior & St. Croix R. R. Co., ever had any interest in the remainder of the bonds held by *Walbridge Bros. & Sargeant;* nor can they have in a litigation respecting them. Causes of action joined must affect all parties to the action. *Warth v. Radde,* 28 How. Pr., 230; *Alger v. Scoville,* 6 id., 131; *Enos v. Thomas,* 4 id., 48; *Boyd v. Hoyt,* 5 Paige, 65; *Gardiner v. Ogden,* 22 N. Y., 327. (2) The plaintiff seeks an equitable remedy by injunction against one of the defendants, and a personal judgment for damages for the conversion of the $75,000 of bonds against others. These causes cannot be joined. *Cary v. Wheeler,* 14 Wis., 281; *Stillwell v. Kellogg,* id., 461; *Faesi v. Goetz,* 15 id., 231. 2. The facts stated do not show a right to the relief sought. (1.) The Superior & St. Croix R. R. Co., upon the delivery of the bonds to it, obtained an absolute title thereto, and had an undoubted right to transfer them to *Walbridge Bros. & Sargeant* as compensation for the work performed and materials furnished by the latter; and the rights of the latter as *bona fide* holders are not affected by the fact that they were officers in the company. Whatever right of action may exist in favor of the county as a stockholder in the railroad company, to recover back the bonds, the question is not presented in this action; for the county here repudiates the relation of stockholder, and seeks to annul its subscription. But even as a stockholder the

county cannot recover, because, whether the supervisors had authority to extend the time for constructing the road or not, they certainly had authority to exercise full control over the stock owned by the county, and cannot repudiate an agreement to which they gave their consent for the county as a stockholder. (2) The board of supervisors had power to extend the time for the completion of the road, and to consent to the agreement that the appellants should retain, as their absolute property, the $75,000 of bonds. Ch. 326, Laws of 1870, under which the subscription of stock was made, confers full power upon them to determine and control all the terms of the contract of subscription and all other matters connected with the ownership of the stock by the county. It contemplates a submission to the electors of the question only of the granting of the aid, and its amount, leaving the terms and conditions to the discretion of the board. An intelligent vote upon all the details of such a loan would be very nearly impracticable. But even were this required by the statute, the power, upon such vote being taken, would be spent, and the stock would become a part of the general property of the county, while the bonds would become a part of its indebtedness, both to be managed by the board of supervisors under the general powers conferred upon them by the constitution and general statutes. Const. of Wis., art. IV, sec. 22; Tay. Stats., p. 291, §§ 2, 3, 4 and 6, and p. 297, §§ 1 and 6. No vote after the first was authorized, and it was necessary that the supervisors should have power to manage the business and protect the interests of the county in any emergency that might arise. That power they exercised in modifying or consenting to the modification of the contract for building the road; and this action cannot be sustained against the appellants.

*P. L. Spooner, H. S. Orton* and *S. U. Pinney*, for respondent:

1. The resolution of the county board extending the time for the completion of, the road and making other changes in the terms upon which aid was granted by vote of the people,

was without authority and void. *Town of Rochester v. Alfred Bank*, 13 Wis., 430; *Lawson v. Schnellen*, 33 id., 288; *Reichard v. Warren Co.*, 31 Iowa, 381; *Bell v. Railroad Co.*, 4 Wall., 598. 2. The agreement between the Superior & St. Croix R. R. Co. and *Walbridge Bros. & Sargeant*, that the latter should retain in their hands $75,000 of the bonds, is invalid, because the members of that firm were directors of the railroad company. *Pickett v. School Dist.*, 25 Wis., 551; Tay. Stats., 1053, § 66. As such they sustained a fiduciary character toward the plaintiff in respect to the subject matter of the contract; and the latter, as a special stockholder, has a right to raise and insist upon the question, whether the corporation does or not. 3. The consideration of the subscription by the county having utterly failed, it had a right to treat the contract as rescinded, and, upon tendering a return of its stock, demand that its bonds be canceled. 8 Foster, 574; 24 Ill., 203; 16 id., 48; Mitf. Pl., 146; 13 Ohio St., 59; *Eames v. Savage*, 14 Mass., 425; *Lyon v. Annable*, 4 Conn., 350; *Gillett v. Maynard*, 5 Johns., 85; *Raymond v. Bearnard*, 12 id., 274; *Putnam v. Wescott*, 19 id., 73; 2 Parsons on Con., 670, 678; *Giles v. Edwards*, 7 Term, 181. This complaint is an application under the well established head of equity jurisdiction for the rescission and cancellation of agreements; the equity for relief in all such cases originating in the fraud which, but for the interposition of the court, would be perpetrated on the complaining party; and such relief is granted not as a matter of strict right, but in the sound discretion of the court, regulated upon such grounds as make it judicial. 1 Story's Eq. Jur., §§ 692–4 et seq; Willard's Eq., 302–7. A contract may be avoided in equity where the object of the agreement is defeated or rendered unattainable by default. *Morrill v. Aden*, 19 Vt., 505; *Baker v. Thompson*, 16 Ohio, 504; *Selby v. Hutchinson*, 4 Gilm., 319. The firm of *Walbridge Bros. & Sargeant* never performed the conditions precedent in their contract with the Superior & St. Croix R. R. Co. upon which their right to the bonds of the

plaintiff county depended; and, the subsequent agreement by which they retained $75,000 of the bonds being void, they stand in no better position, as respects the plaintiff, than that company. The resort to equity was made necessary by the bankruptcy of the railroad company, and the necessity of a rescission of the contracts for the protection of the county. 4. The complaint is not multifarious. The general rule as to parties in equity is, that 'any one who will be directly affected by a decree, or is interested in the controversy, or who, if not interested in the controversy between the immediate litigants, has an interest in the subject matter which may be conveniently settled in the suit, so as to prevent litigation, is at least a proper if not in all cases a necessary party (Story's Eq. Pl., §§ 72, 76, n. 2; R. S., ch. 122, sec. 19; *Williams v. Bankhead*, 19 Wall., 571; id., 284; *Shields v. Barrow*, 17 How., 130); and this, although the different defendants may have separate interests in distinct or independent questions, all connected with and arising out of the single subject of the suit, or their rights in respect to the general subject of the action may be different, and some may be directly interested in only a part of the general claim. *Oliver v. Piatt*, 3 How., 411; *Fitch v. Creighton*, 24 id., 159, 163; *Boyd v. Hoyt*, 5 Paige, 65; *Winslow v. Dousman*, 18 Wis., 456; *Fellows v. Fellows*, 4 Cow., 682, 700; 2 Wis., 673; Story's Eq. Pl., § 271a; *Damon v. Damon*, 28 Wis., 510; *Bassett v. Warner*, 23 id., 673. In this case a part of the relief sought is the rescission of the tripartite agreement, in which all the defendants are directly interested.

COLE, J. There are really but two objections taken to the complaint on the demurrer: first, multifariousness, or the improper joinder of several causes of action which are distinct in their nature and do not affect all the defendants; secondly, that the complaint fails to state a cause of action against the defendants, or either of them. These points will be considered in the order in which they are raised by the demurrer.

The counsel for the defendants insist that so far as the recovery of the $275,000 bonds in the custody of the First National Bank of Madison, as trustee, is concerned, the defendants *Walbridge Bros. & Sargeant* have no interest whatever; and that so far as a recovery is sought against *Walbridge Bros. & Sargeant* of the $75,000 bonds, or the proceeds thereof, none of the other defendants have any interest. And the counsel insist that the plaintiff cannot and should not be allowed to thus unite in one suit these distinct matters against parties having no joint interest, and who have no connection with the different transactions stated in the complaint.

An examination of the complaint will show that these objections are not well founded. One object of the action, and a part of the relief sought, is to have adjudged void the tripartite agreement entered into on the 26th day of June, 1873, between the Superior & St. Croix Railway Company, the Northern Pacific Railway Company and *Walbridge Bros. & Sargeant.* These defendants all acquired rights under that agreement, and it seems to us plain that the agreement cannot be adjudged void without having all the parties interested in it before the court. It is a general rule, that where a party is directly affected by the decree, he is an indispensable party; and the courts only depart from the rule when the parties are so numerous that it would be inconvenient or impossible to comply with it. *Williams v. Bankhead*, 19 Wallace, 563; Story's Eq. Pl., § 94. The cancellation of this agreement affects directly and essentially all the parties to it, and certainly entire justice cannot be done unless they are before the court. If the only relief sought were the rescission of the contract made in the first instance between the plaintiff and the Superior & St. Croix Railway Company, under which the bonds were delivered and aid granted, some of the defendants would not, possibly, have so direct an interest in the subject matter of the litigation. Though even then, upon the statements in the complaint, all

the defendants would seem to be proper, if not necessary, par-
ties to granting such relief.

But the objection of multifariousness is confined to cases
where the cause of action against each particular defendant is
distinct and separate in its subject matter from those against
the other defendants. If the grounds of action be not entirely
distinct and unconnected — if they arise out of one and the same
transaction, or a series of transactions forming one course of
dealing, and all tending to one end, — the objection does not ap-
ply. Story's Eq. Pl., § 271 b ; *Blake v. Van Tilborg*, 21 Wis.,
672. In the case cited, Mr. Justice DOWNER states the rule as
follows: "A complaint does not improperly unite several
causes of action, which relates to matters of the same nature
all connected with each other, and in which all the defendants
are more or less interested or concerned, though their rights in-
respect to the general subject of the action may be different,
and some may be directly interested only in a part of the gen-
eral claim." In *Brinkerhoff v. Brown*, 6 Johns. Ch., 139, Chan-
cellor KENT considers, with his usual research and learning,
the question of multifariousness, and, after an examination of
the English cases upon the subject, deduces this rule from
them: "A bill against several persons must relate to matters
of the same nature and having a connection with each other,
and in which all the defendants are more or less concerned,
though their rights in respect to the general subject of the case
may be distinct." p. 156. This rule is cited with approba-
tion in *Fellows v. Fellows*, 4 Cowen, 682, and is in effect recog-
nized and followed in *Winslow v. Dousman*, 18 Wis., 457, and
*Bassett v. Warner*, 23 id., 673. This complaint is not multifar-
ious, within these rules. All the matters stated in it are more
or less connected, and all the defendants are more or less con-
cerned or interested in them. The defendants are not only in-
terested in the question as to the validity and binding obliga-
tion of the arrangement made on the 26th day of June, 1873,

but they would also seem to be interested in the decision which shall be made as to the right of the county to a rescission of its original contract with the Superior & St. Croix Railway Company, and the recovery of its bonds. They therefore have, in the language of the judges in *Fellows v. Fellows*, "one common interest centering in the point in issue in the cause," namely, whether the county, upon the case presented, is entitled to annul its subscription and have the relief demanded. Its right to recover the $75,000 bonds of *Walbridge Bros. & Sargeant*, and the $275,000 in the possession of the trustee, turns upon its right to have the contracts mentioned in the complaint adjudged void.

Does, then, the complaint state a cause of action against the defendants, more especially against *Walbridge Bros. & Sargeant*, who alone have demurred? Upon this point the able and lucid argument of plaintiff's counsel left no room for doubt.

The county offers to return to the Superior & St. Croix Company the stock which was issued to it in exchange for its bonds, and demands a rescission of the contract on which aid was voted, and also a rescission of the contract of June 26, 1873, and seeks to recover its bonds. The ground upon which this relief is claimed, is in brief this: The building of the road, it is said, and the stock, were the consideration for the aid voted. The Superior & St. Croix and Northern Pacific companies are insolvent, and no benefit can ever accrue to the county from what has been done by the defendants. The scheme has utterly failed, and unless the contracts in question can be rescinded, and the bonds or their value restored, the county will have to pay them without ever having received any benefit from them, the stock being utterly worthless and there being a total failure of consideration. The bonds, being of a negotiable nature, may pass into the hands of innocent holders, where no defense to them would be available, and a fraud will be perpetrated upon the county, if the court does not interfere and order them to be returned for cancellation. It seems to us

that these considerations address themselves with great force to a court of equity.    The application to a court of equity, say the authorities, for the rescission, cancellation or delivering up of agreements and securities, is not founded upon an absolute right, but is rather an appeal to the sound discretion of the court, which, in granting or refusing the relief prayed, acts upon its own notions of what is reasonable and just under all the surrounding circumstances.    While we are to understand that the interference of a court of equity in these cases is a matter of mere discretion, this is not an arbitrary and capricious, but a sound and reasonable discretion, *secundum arbitrium boni judicis.* 1 Story's Eq. Jur., § 693 ; Willard's Eq., ch. 4, sec. 3.

It surely seems reasonable and just, on the facts stated, for a court of equity to exercise its jurisdiction, and order a rescission of the contracts and a return of the bonds to the county. No part of the road has been built, the construction of which was doubtless the real consideration for voting aid to the company ; and the work has been abandoned.    The defendants have no equitable right to retain the bonds, when they refuse or are are unable to perform their contract.    The bonds, from their negotiable character, are liable to pass into the hands of innocent holders, or may be used for an improper purpose, to the injury of the county,    And if a resort to equity for the cancellation or delivering up of securities can be sustained on the ground of protective justice, and considerations of what is just and reasonable, this case calls for the exercise of the power.

The counsel for the defendants insist that the facts only show an ordinary instance of a nonperformance of a contract, and that the remedy is at law for damages.    But this is obviously an inadequate and insufficient remedy, as was demonstrated by the counsel on the other side.    The Superior & St. Croix Company has no property of any considerable value ; the Northern Pacific, even if it had entered into a binding obligation to complete the road, is notoriously insolvent ; and an action upon

the indemnifying bond would afford no adequate redress.    For that bond is only in the sum of $200,000, while the amount of the county bonds is $350,000.    The county would sustain a loss of $150,000, if forced to pay its bonds, though it might be able to collect of the sureties the entire amount of the indemnifying bond.    This fact alone shows that the remedy at law is inadequate and doubtful.

The counsel for the defendants also insisted, that as an absolute title to the bonds passed to the Superior & St. Croix Company, that company had an undoubted legal right to release *Walbridge Bros. & Sargeant*, from their contract to construct the road, and to make them compensation for work done and material furnished, by delivering them the $75,000 which they now hold.    It may be true that the title to the county bonds passed by delivery to the company, but it seems to us utterly impossible, upon the facts stated, to sustain the position that *Walbridge Bros. & Sargeant* are *bona fide* holders for value of any considerable portion of these bonds, and entitled to protection as such.    They have only done an inconsiderable amount of work on the road ; have not constructed a single mile, nor furnished a single car or locomotive ; and have abandoned their contract entirely.    It seems to us they stand essentially upon the same ground as the company, and are entitled to no greater consideration.    Their right to hold the $75,000 bonds is derived through or founded upon the arrangement entered into June 26, 1873, which we consider void and not binding on the county.    For to our minds the resolution of the county board extending the time for the completion of the road and making other changes in the proposition upon which aid was granted by a vote of the electors, was without authority and void.  The agreement which was entered into between the county board and the Superior & St. Croix Company, and which was submitted to the electors when aid was voted, could not be essentially modified or changed by the county authorities.    *Lawson v. Schnellen*, 33 Wis., 288.    The reason for this view is given

in the case cited; and it is, because the inhabitants or voters of the county are the real contracting party on the one side, and the railroad company on the other, the county board being merely agents of the former to execute a special authority. It is said that the county board had plenary power over the matter, and could modify and change the terms upon which aid was voted as they thought proper. We do not, however, so understand the act under which aid was voted. By the 16th and 17th sections of the act it was in substance provided, that the county might aid in 'the construction of the road by subscribing to the stock of the company and by issuing bonds for the payment of the same; and to that end the county board was authorized to negotiate and arrange with the company the terms and conditions upon which aid should be granted. But before aid could be granted or contracted for, the question of granting the same was required to be submitted to the electors of the county. *The question was to be fairly submitted;* which implies that the question as to the amount, as well as the terms upon which the aid should be granted, was to be submitted. It is unreasonable to suppose the legislature intended to to give the electors only the right to express their views upon the mere bald question of granting aid without regard to the amount, and without reference to the terms and conditions of granting it — leaving these latter matters entirely and wholly under the discretion of the county board. According to our view of these provisions, it was contemplated that the electors should express their view upon those questions. The right was reserved to them of voting upon the question of granting aid, and also upon the amount and conditions of granting the same. Nor was it competent for the board to modify and change the terms upon which aid was voted. Here they attempted to change them in most important particulars. The people were doubtless anxious to secure a speedy completion of a railroad from the bay of Superior to the Northern Pacific in Carlton county. They probably believed they would secure

great commercial advantages by the early construction of that road. The time in which the proposed road was to be completed, would be an important element in the question whether aid should be granted. All this is too obvious to require elaboration. *Non constat* that aid would have been voted if the proposition had been to complete the road by the 1st of July, 1875. In this matter the board exercised the special powers conferred by the act, and they could not call to their aid the general provisions of law relating to their duties, to enlarge and practically destroy the limitation upon their authority.

It results from these remarks that the second ground of demurrer is not well taken.

*By the Court.* — The order of the circuit court overruling the demurrer is affirmed.