GLOEDE, Appellant, vs. SOCHA, Respondent.

*September 11—October 8, 1929.*

504

For the appellant there was a brief by *Whaley & Paulsen,* attorneys, and *Fulton Thompson,* of counsel, all of Racine, and oral argument by *Mr. Thompson* and *Mr. Vilas H. Whaley.*

For the respondent there was a brief by *Benson & Mogensen*, attorneys, and *John B. Simmons*, of counsel, all of Racine, and oral argument by *Mr. Guy A. Benson* and *Mr. Simmons*.

FRITZ, J.   In view of the peculiar adaptability of defendant's land for use in her son's sand business and the importance to her of avoiding plaintiff's acquisition thereof to the exclusion of her son, Blessinger's misrepresentations as to the real purchaser, and his concealment of plaintiff's connection with the deal, were decidedly material.   Plaintiff, as well as his agent, Blessinger, well knew that the misrepresentations, concealment, and deceit practiced by Blessinger misled the defendant, and that, relying thereon, she was induced to sign the contract.   Under the circumstances the plaintiff is chargeable with all of Blessinger's misconduct and sharp practice in dealing with the defendant, up to November 3, 1927, when the contract was assigned to the plaintiff.   Consequently, plaintiff is in court with unclean hands.

Specific performance, which plaintiff seeks, is not a matter of strict right.   "Whether specific performance will be decreed or not is a question addressed to the sound discretion of the court." *Engberry v. Rousseau,* 117 Wis. 52, 57, 93 N. W. 824.

"The discretion of courts is not an arbitrary or capricious one, but one exercised in accordance with the established principles of equity. *Park v. M., St. P. & S. S. M. R. Co.* 114 Wis. 347, 353, 89 N. W. 532.  It has been held that although a defendant may not be entitled to a cancellation or rescission of a contract, yet specific performance thereof may be denied. 36 Cyc. 549, and cases cited.  In this state an application to a court of equity for the rescission or cancellation of a contract is one likewise addressed to the sound discretion of the court, and in granting or refusing it the court acts upon its own notion of what is reasonable and just under all the surrounding circumstances, the discretion being, of course, a sound one, and it must be exercised within established equitable principles. *Douglas County v. Walbridge,* 38 Wis. 179,

191. In an action for specific performance or for cancellation of a contract, negligence of the party seeking to be relieved of the contract does not prevent relief; it presents a reason why, in the exercise of a sound discretion under all the facts and circumstances, the court may not grant relief; it may be one reason for denying relief, it is not a bar to relief." *Woldenberg v. Riphan,* 166 Wis. 433, 435, 166 N. W. 21.

As was further held in *Engberry v. Rousseau, supra,* the plaintiff's claim for a deed must be "fair, just, and reasonable." Even though there may not be actual fraud on plaintiff's part, there may be "what might well be called 'sharp practice,' not pleasant to contemplate and not calculated to appeal with favor to the conscience of the chancellor."

So, in the case at bar, even though the misrepresentations may not constitute actionable fraud, the sharp practice resorted to by plaintiff and his agent was so unfair and reprehensible as to be abhorrent to the conscience of the chancellor, and well warranted the court in denying specific performance, in the exercise of its sound discretion. As was said in *Siess v. Anderson,* 159 Mo. App. 656, 139 S. W. 1178, in relation to very similar facts on which specific performance was denied:

"It should not lie in the mouth of the plaintiff to say that she [the defendant] is not prejudiced by being fraudulently deprived of the very thing which induced her to make the contract, viz. a grantee other than D.; at least not in a suit for specific performance where 'the principles of ethics have a more extensive sway' than in ordinary cases, and the plaintiff 'must as to every part of the transaction be free from any imputation of fraud and deceit.'"

To the same effect, see *New York B. Co. v. Wharton,* 143 Iowa, 61, 119 N. W. 969; *Ellsworth v. Randall,* 78 Iowa, 141, 42 N. W. 629; *Cowan v. Curran,* 216 Ill. 598, 75 N. E. 322; *Brett v. Cooney,* 75 Conn. 338, 53 Atl. 729; *Kelly v. C. P. R. Co.* 74 Cal. 557, 16 Pac. 386.

Plaintiff contends that there was a ratification of the con-

tract by the defendant, because he claims that after she had acquired, or by proper diligence should have acquired, knowledge of the purchaser's identity, she recognized the validity of the contract and proceeded to execute it, or, at least, failed to disaffirm promptly.

Conduct or acts of a party, or his omissions to act, will not operate as an affirmance or ratification of a contract which he was induced to enter into by fraud or misrepresentations, unless at the time of such conduct, acts, or omissions he had full knowledge of such fraud or misrepresentations or was chargeable with such knowledge. 39 Cyc. p. 1294. In the case at bar the last affirmative act of the defendant was her deposit on October 8, 1927, of Blessinger's $1,000 note for collection. However, she did not do that until after Blessinger again repeated his deception by informing her that she could then deposit the note because the Chicago man had forwarded the money. Certainly, inasmuch as Blessinger, in whom she still had confidence, then again referred to the Chicago man as the source of the purchase money, it cannot be said that she had full knowledge of the falsity of Blessinger's representations, merely because of some suspicious circumstances to the contrary.

After October 8, 1927, she is chargeable only with omissions to act, or to disaffirm, in that she failed to give notice that she would not accept the payment which the bank notified her on November 4, 1927, had been made of Blessinger's $1,000 note; and in that she failed to return, until November 30, 1927, the $1,000 initial payment and the $2,000 cashier's check which was sent to her by mail on November 19, 1927, without any statement disclosing on whose behalf the remittance was made.

Defendant admits that when the November payments were made she did not know what to do. Circumstances in contradiction of Blessinger's representations were occasioning doubt in her mind, but that doubt still fell far short of full

knowledge of the falsity of Blessinger's representations. On the other hand, the plaintiff, as well as Blessinger, knew at all times that the defendant was never willing to sell to the plaintiff, and that whatever she did, or omitted to do, prior to November 30, 1927, was not done or omitted with any intention on her part to affirm a sale to the plaintiff. Only Blessinger, plaintiff, and his attorney had actual knowledge as to who was the real purchaser, but they studiously refrained from disclosing the truth to the defendant, and even in the last letter inclosing the $2,000 cashier's check, which was mailed to her on November 19, 1927, that concealment was continued. How then, or from what other authentic source, could the defendant have obtained the definite information necessary for her to have full knowledge? The trial court rightly concluded that she did not have the requisite knowledge, and hence did not ratify the contract or waive the misrepresentations and fraud practiced on her.

Plaintiff also contends that the trial court erred in admitting testimony as to what Blessinger said about the purchaser being a Chicago party and not plaintiff, after September 22, 1927, and up to the time, in October, when he told her that the Chicago man had forwarded the money to pay the $1,000 note. That testimony was admissible for several reasons. The evidence fairly warranted the court in finding that Blessinger continued as the agent for the plaintiff up to November 3, 1927, when he assigned the contract to the plaintiff. At all events the agency certainly still existed when plaintiff caused his attorney and Blessinger to confer with the defendant on October 4, 1927. On the other hand, until the assignment on November 3, 1927, Blessinger continued as the nominal vendee under the contract, and admissions or declarations made by him while such vendee, and as such a privy in estate to his assignee, the plaintiff, were competent evidence as against the plaintiff. 2 Jones, Comm. on Evidence (2d ed. 1926), secs. 903, 908.

Furthermore, one of the material issues was as to whether, and when, the defendant acquired full knowledge of the fraud. That depended on the information which came to her from time to time, and the apparent reliability thereof. The statements made by Blessinger, on whom she relied, and who was in a position to know and tell her who was the real purchaser, constituted a part of that information. Proof thereof was proper and admissible, to enable the court to determine the nature and extent of her knowledge on the subject. 3 Jones, Comm. on Evidence (2d ed.), p. 2011, sec. 1088.

*By the Court.*—Judgment affirmed.