Stanley E. SAND, Plaintiff/Appellant,

v.

RED RIVER NATIONAL BANK AND TRUST COMPANY OF GRAND FORKS, as Executor of the Estate of Theodore Tollefson, Deceased, and Luella Mildred Hillstead, heir and beneficiary of the Estate of Theodore Tollefson, Deceased, Defendants/Appellees.

Civ. No. 9006.

Supreme Court of North Dakota.

Dec. 5, 1974.

Ralph S. Oliver, Larimore, for defendant Red River Nat. Bank & Trust Co.

O'Grady, Edwards, Anderson & Lawrence, Grand Forks, for defendant Luella M. Hillstead.

Richard L. King, Grand Forks, and Mart R. Vogel, Fargo, for plaintiff.

JOHNSON, Judge.

This is an action for the specific performance of a contract entered into between Theodore Tollefson, now deceased, and his employer, Stanley Sand, for the sale of a quarter section of land located in Grand Forks County, North Dakota. After Tollefson's death, Sand sued the executor of his estate for specific performance to obtain a deed to the property. The trial court found that Tollefson was unaware of the meaning of the instrument which he signed, that Sand was guilty of overreaching and constructive fraud, and that he breached a confidential relationship between himself and Tollefson. Upon these findings the trial court denied specific performance and ordered cancellation of the contract.

Under the terms of the purchase contract, titled "Contract for Deed" and dated December 14, 1970, Tollefson sold a quarter section of farmland to Sand for the sum of $6,000. The contract provided that Tollefson would receive a down payment of $50 and $50 annually for the remainder of his life. At the time of Tollefson's death the balance was to be paid to his estate without interest. The contract further provided that Tollefson would retain possession of the property and receive the rents and profits during his lifetime. A cover letter to Mr. Sand from his attorney, which was found among Mr. Tollefson's effects, termed the contract very fair and indicated that it protected Tollefson's rights completely. Tollefson rented the property to

Mr. Sand and received as rental one-fourth of the crop and one-fourth of the government payments. In addition, he received income from the sale of gravel located on the property.

The property was purchased by Mr. Tollefson for $2,750 in 1946. There is some conflict in the evidence as to the value of the property at the time the contract was signed. It does appear, however, that the contract price was quite low and the contract terms unique for transactions of this type.

Mr. Tollefson did general farm work for the plaintiff and had worked for the Sand family for an extended period, having been first employed by Mr. Sand's father. Tollefson appears to have been very close to the Sand family. He ate his meals with them, lived on their farm, was present at certain family gatherings, and looked to Mr. Sand as a source of advice. At the time the contract was signed Mr. Tollefson was 77 years old. Poorly educated and virtually illiterate, any mail he received was read to him. The evidence indicates that he was unable to write anything beyond his name, and that his conversation would sometimes drift. He did, however, purchase and drive his own vehicles and operated a sheepshearing business when he was not working on the Sand farm. There was testimony from several persons that Mr. Tollefson had manifested intentions not to sell his property but to retain it. They were not aware of the contract with Mr. Sand until after Mr. Tollefson's death. There were other indications that Mr. Tollefson was the owner of the property. Mrs. Sand reported Mr. Tollefson to be the owner of the land in a story for the weekly newspaper at Northwood covering his 88th birthday. Mr. Tollefson received payments in connection with a gravel lease covering gravel removed from the property and represented himself to be the owner in that regard. During the years 1961 through 1972 Sand and Tollefson signed papers from the Agricultural Stabilization and Conservation Service office relating to farm matters as tenant and owner, respectively.

The four issues raised by Sand on appeal are:

1. Is the trial court's finding that the plaintiff, in drawing up and entering into the contract for deed with the deceased, Theodore Tollefson, was guilty of overreaching and breached a confidential relationship existing between them, clearly erroneous?

2. Is the trial court's finding that the consideration for the sale was inadequate and thus the plaintiff was guilty of constructive fraud while coming into court with unclean hands, clearly erroneous?

3. Is the trial court's order denying specific performance of the contract and declaring it null and void clearly erroneous?

4. Was the trial court's refusal to permit Darlene Sand, the plaintiff's wife, to testify in rebuttal reversible error?

Appellant's counsel argues persuasively from the testimony, and the inferences drawn from the evidence, that Sand and his family were the natural objects of Mr. Tollefson's bounty, and thus any unusual attributes of the transaction were due to their close relationship and the desire to insure eventual disposition of the property to them. It is urged that his relationship with his daughter, from whom he had been long separated, was tenuous at best.

From much the same evidence, but drawing different inferences, appellees' counsel argues that Sand took advantage of the special confidence provided by his unequal relationship with Mr. Tollefson.

In a suit for specific performance of a contract we are dealing in equitable remedies, those remedies having their origin in the English courts of chancery. These remedies were originally devised by the ecclesiastical courts to mitigate the harsh judgments often resulting in the common law courts. As such, concepts of justice, and even mercy, for the individual case predominated over general rules of law. In

order to obtain equity jurisdiction it was deemed necessary to "do equity." An individual was not allowed to come into a court of equity "with unclean hands."

So, in a modern context, when a party asks for the remedy of specific performance of a contract—a court-enforced performance by the other party—he is held to a higher standard than if he merely asks for money damages for breach of the contract.

The granting of specific performance rests in the sound discretion of the court and if the contract is not found to be fair, reasonable, and based on adequate consideration, specific performance may be denied. Arhart v. Thompson, 75 N.D. 189, 26 N.W.2d 523, 527 (1947); Beebe v. Hanson, 40 N.D. 559, 169 N.W. 31 (1918). An additional ground for denial in this case was undue influence. The existence of undue influence is a question of fact depending upon the circumstances of a particular case. Three factors must be found: (1) a person who can be influenced, (2) improper influence exerted, and (3) submission to the overmastering effect of such conduct. Hendricks v. Porter, 110 N.W.2d 421, 429 (N.D.1961).

Cases of this type, whether will contests or actions to set aside deeds and contracts, involve difficult decisions by the trial court. Because of the close family and personal relationships involved, there are often strong antagonisms and emotional responses developed on both sides. The difficulties in such cases are evidenced by the decisions cited by counsel in support of their positions. Hendricks v. Porter, supra; Johnson v. Johnson, 85 N.W.2d 211 (N.D.1957); Arhart v. Thompson, 75 N.D. 569, 31 N.W.2d 56 (1948); Meyer v. Russell, 55 N.D. 546, 214 N.W. 857 (1927).

In these cases, with a de novo review, the court made a detailed analysis of the evidence upon the record, and the members of the court often split upon the result. It was with a view to cases of this type that Rule 52(a) of the North Dakota Rules of

Civil Procedure was adopted and the de novo review statute repealed. See Ch. 311, S.L.1971. The supreme court was removed from a role for which it was ill suited—the role of fact finder. We are not present in the courtroom to see and hear the witnesses, their mannerisms, their vocal intonations, or their reactions to the give and play of examination and cross-examination. We must rely on a cold record of the proceedings and, while this gives us the advantage of hindsight, it does not provide the best vehicle for testing truth of testimony and veracity of witnesses.

We are here involved with subtle distinctions of individual pressure and intent. A tone of voice or a personal mannerism might tend to establish these matters and never reflect itself in the appeal record. The standard to be applied upon review of the trial court's findings is stated in Rule 52(a), N.D.R.Civ.P.:

> "Findings of fact shall not be set aside unless clearly erroneous, and *due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."* [Emphasis supplied.]

This rule establishes a standard which gives the trial judge more finality of decision. In re A. N., 201 N.W.2d 118 (N.D.1972). Even if we might have reached a different result, we are not justified in setting the findings of fact aside. Kee v. Redlin, 203 N.W.2d 423 (N.D.1973).

Much of the evidence in this case may be subject to differing interpretations as to intent and good faith. Setting such evidence aside, several major factors remain. Mr. Tollefson and Mr. Sand were in greatly disparate situations in terms of making business judgments. Mr. Sand stood in a relationship of personal confidence to Mr. Tollefson. There was substantial evidence that Mr. Tollefson did not understand the nature of the contract. While the "contract for deed" did provide for Mr. Tollefson to retain rents and profits, it was of an unusual character and not consistent with ordinary business practice.

It is unnecessary to deal in emotion-tinged words, such as "fraud," in order to resolve this matter. The substance of issues 1 through 3 can be resolved by holding that the trial court's findings of overreaching, breach of a confidential relationship, inadequate consideration, and insufficient showing to grant specific performance were not clearly erroneous.

Issue number 4 relates to an evidentiary objection. In the course of his rebuttal, Sand's counsel called Mrs. Sand as a witness. After some preliminary testimony, opposing counsel objected to the testimony on the question of whether Tollefson could read or write. It was argued that this was not proper rebuttal since this matter was raised by the witnesses called by Sand in presenting his case. The trial judge agreed.

The trial judge is vested with considerable discretion in rulings of this type. In addition, it appears that much of this same testimony was given by Mr. Sand himself. Sand was also later permitted to reopen his case and did not attempt to introduce this testimony at that time. Under the circumstances the error, if any, was harmless. See Lowery v. Turner, 19 Ariz. App. 299, 506 P.2d 1084 (1973); Bean v. Riddle, 423 S.W.2d 709 (Mo.1968).

In holding that specific performance was not improperly denied we have not entirely disposed of issue number 3. In addition to denying specific performance, the trial judge granted cancellation of the contract on condition that the $500 paid under the contract be refunded. A denial of specific performance means the contract will not be enforced in equity. A granting of cancellation or rescission of the contract means that it will not be enforced in equity or law. The standard for granting cancellation is more strict than that for denying specific performance. The shoe is on the other foot and affirmative relief in equity is requested. See Meredith v. Dailey, 29 Ill. App.2d 255, 173 N.E.2d 586 (1961); Gloede v. Socha, 199 Wis. 503, 226 N.W. 950 (1929).

There was evidence that some $2,000 was expended by Sand in drainage improvements upon the land in reliance upon the contract. Expenditures of this nature should be considered in determining the reimbursement appropriate to place the parties in the position they occupied previous to the contract. Reimbursement should be made, at least to the extent of the increased value of the land resulting from the improvements. Restatement of the Law, Restitution, § 158.

That portion of the judgment relating to cancellation of the contract is vacated and remanded for consideration of the appropriate reimbursement previous to cancellation. The balance of the judgment is affirmed.

ERICKSTAD, C. J., and KNUDSON, PAULSON and VOGEL, JJ., concur.