In re SUNSET MEMORIAL GARDENS, INC., a/k/a Sunset Memorial Gardens, Inc. of Fargo, Debtor.

MEMORIAL ASSOCIATES, INC., a joint venture in the process of incorporation whose members are Boulger Funeral Home, Inc., a North Dakota corporation, Hanson-Runsvold, a North Dakota corporation, Ivers-Landblom Funeral Home, a North Dakota corporation, West Funeral Home, a proprietorship owned by William W. West, and Wright Funeral Home, Inc., a Minnesota corporation, Plaintiffs,

v.

SUNSET MEMORIAL GARDENS, INC., Defendant.

Bankruptcy No. 83-05629.
Adv. No. 84-7158.

United States Bankruptcy Court, D. North Dakota.

May 22, 1985.

---

Robert Feder, Fargo, N.D., for plaintiffs.

David T. DeMars, Fargo, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Plaintiffs, Memorial Associates, Inc., filed on December 7, 1984, a Complaint with the Court seeking specific performance of an alleged agreement reached between it and the Debtor, Sunset Memorial Gardens, Inc. Memorial Associates requests a mandatory injunction requiring the Debtor to execute a written contract embodying the agreement allegedly reached between the parties. Memorial Associates alternatively requests that the Court appoint a trustee with directions to execute the contract on behalf of the Debtor. Sunset Memorial Gardens filed its Answer and Counterclaim with the Court on January 8, 1985. The Answer generally alleges that no agreement was reached between the parties in that there was no mutual assent or consideration for support of the agreement, and as its counterclaim the Debtor requests award of attorney's fees and costs alleging that the Complaint was brought in bad faith. Trial in the above-entitled adversary proceeding was held before the undersigned on May 10, 1985, in Fargo, North Dakota. The relevant facts established at trial are, as follows:

## FINDINGS OF FACT

Memorial Associates is a joint venture of five funeral homes in the Fargo-Moorhead area. The funeral directors were first approached by Sunset Memorial Gardens when Earlyne Hector, a director of Sunset, contacted Edgar E. Wright, Jr. for assistance in July or August of 1983. Some time after Labor Day 1983, the entire Board of Directors for Sunset met with the area funeral directors to assure them of the Debtor's continued operations and to smooth relations between the cemetery and the funeral homes. Subsequently, a letter dated September 29, 1983, was sent on behalf of the funeral homes to the President and Secretary of Sunset Memorial Gardens. The letter outlined a proposal by the funeral homes for assistance to Sunset in alleviating losses experienced through its previous administration. The offer made in the letter of September 29, 1983, included a dollar-for-dollar credit on crypt beds, prompt payment of grave digging charges, and reimbursement to Sunset the wholesale cost of vaults and grave markers. The offer of the funeral homes was transcribed into a written agreement which was presented to Sunset's Board of Directors prior to the First Meeting of Creditors held in the bankruptcy case. An Involuntary Chapter 11 Bankruptcy Petition was filed against Sunset Memorial Gardens on December 15, 1983. The Petition was uncontested, and an Order for Relief was entered by the Court on February 13, 1984. The First Meeting of Creditors was held in the case on April 11, 1984.

A letter dated September 26, 1984, delivered on behalf of the local funeral homes to Sunset Memorial Gardens outlined an additional offer by the funeral homes for assistance to Sunset. In the letter of September 26, 1984, the funeral directors offered to loan Sunset sufficient sums to extinguish all the debts of Sunset and Moorhead Memorial Gardens. The funeral directors requested as security for their loan positions on the Board of Directors of the cemeteries.

The Board of Directors of Sunset Memorial Gardens met at the Biltmore Motor Hotel on October 13 and October 15, 1984. Sunset's Directors accepted at that time offers of assistance from any interested parties. The Directors received at the meeting a written offer dated October 12, 1984, from the funeral homes which are collective venturers in Memorial Associates. The attorney for Memorial Associates explained in detail to Sunset's Directors the provisions of their offer. A competing proposal was submitted to Sunset's Directors by the Vertin Company. Earlyne Hector, secretary-treasurer of Sunset, testified at trial that the proposal made by Vertin "was a joke." The Vertin proposal was basically a management agreement and did not operate to relieve victims of Sunset's prior administration. Hector further testified that the Board of Directors voted at the Biltmore meeting to accept the proposal of Memorial Associates, subject to negotiations within the proposal. According to Hector, the agreement with the funeral directors is the only way to save Sunset Memorial Gardens.

After acceptance of the offer made by Memorial Associates, a double-spaced agreement was drafted and delivered to the attorney for Sunset Memorial Gardens. No changes were made in the agreement, and a final single-spaced draft of the agreement was presented to the Board of Directors. Basil Walker, President of Sunset, did not put the agreement to a vote of the Directors. Rather, the Directors discussed removing Moorhead Memorial Gardens from treatment under the agreement. Earlyne Hector understood from discussions that Sunset's attorney was to be instructed about negotiating Moorhead Memorial out of the contract. The written agreement was never signed, and Memorial Associates commenced the present adversary proceeding seeking enforcement of the agreement. No negotiations over the agreements were held between the parties after the meetings in October 1984.

## CONCLUSIONS OF LAW

### 1.

The Plaintiff seeks in this instance a mandatory injunction requiring

the Debtor to execute a written contract or alternatively specific performance of the oral agreement reached with the Defendant. When determining whether to grant a permanent injunction, courts generally apply a three-step analysis, outlined as follows:

1. whether the plaintiffs have actually succeeded on the merits of their claim;

2. whether the "balance of equities" favors the granting of injunctive relief;

3. determine what form the injunctive remedy should take.

*Coleman v. Block*, 580 F.Supp. 194, 209 (D.N.D.1984). Success on the merits of a claim for specific enforcement of an agreement requires that the plaintiff initially establish that a contract exists. The existence of a contract is a question of fact for the trier of fact. *Hirschkorn v. Severson*, 319 N.W.2d 475, 478 (N.D.1982). The person seeking specific performance of an agreement has the burden of proving he is entitled to it, including the terms of the contract upon which he relies. *Wolf v. Anderson*, 334 N.W.2d 212, 215 (N.D.1983); *Hirschkorn*, 319 N.W.2d at 478. Further, the burden of proof includes a showing of good faith on the part of the plaintiff. *Rohrich v. Kaplan*, 248 N.W.2d 801, 807 (N.D.1976). The elements required for existence of an enforceable contract include:

1. Parties capable of contracting;

2. The consent of the parties;

3. A lawful object; and

4. Sufficient cause or consideration.

N.D.Cent.Code § 9–01–02 (1975). Courts will not enforce a contract when its terms are vague, indefinite and uncertain. *Hughes Realty Company v. Breitbach*, 98 N.W.2d 374, 376 (N.D.1959). Nevertheless, the law does not favor destruction of contracts and, if at all feasible, courts will construe an agreement so as to carry into effect the reasonable intention of the parties. *Hughes Realty Company*, 98 N.W.2d at 377. In addition to ascertaining the terms of a contract, the plaintiff must prove mutual assent supported by adequate consideration. Memorial Associates

has expended much effort in persuading the Court that its proposal is "a good deal" for the Debtor and that its future existence depends on acceptance of its proposal. The Court is not concerned with how much the agreement will benefit the Debtor. The primary concern for this Court is whether an agreement existed which, for some reason, is not legally enforceable but which in equity should be recognized by the courts.

█ When a contract proposal is a bilateral offer, one which looks for a promise, the only way that the offeree can accept is by giving the requested return, the promise. *Restatement of Contracts* (1st) § 52 (1932). Where a bilateral offer is made, the acceptance by return promise must be contained in an unequivocal manifestation of intent to make the requested promise. Equivocating words will not be construed as an acceptance. *Beiseker v. Amberson*, 17 N.D. 215, 116 N.W. 94 (1908). The court in *Beiseker* stated, as follows:

It is an elementary principle in the law of contracts that an unqualified acceptance by letter in answer to an offer submitted by letter creates a binding contract in writing. It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words, the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into.

*Beiseker*, 116 N.W. at 94–95. The unequivocal manifestation of assent required for acceptance of an offer may be made by conduct or an express promise. N.D.Cent. Code § 9–03–20 (1975). In the present instance, the acceptance by the Board of Directors of Sunset Memorial Gardens was made "subject to negotiation." The Court cannot find that acceptance is the unequivocal assent necessary for formation of an agreement. Since mutual assent on the

part of the parties to this dispute is lacking, no contract exists.

Even if the Court were to find that Sunset consented to the proposal made by Memorial Associates, the Court must additionally find that the mutual assent is supported by consideration. Consideration has been defined as any benefit conferred or detriment suffered. *See Harrington v. Harrington*, 365 N.W.2d 552, 555 (N.D. 1985). Where mutual promises were made, each furnishes a sufficient consideration to support the action of the other. *See Overboe v. Overboe*, 160 N.W.2d 650, 653 (N.D. 1968). If consideration does exist, courts will generally not inquire into the adequacy of the consideration. *Harrington*, 365 N.W.2d at 555. Nevertheless, when specific performance of an agreement is requested, a court acting in equity will inquire into the adequacy of the consideration when examining whether there existed undue influence upon the party against whom the contract is sought to be enforced. *Id.; Sand v. Red River National Bank & Trust Co.*, 224 N.W.2d 375, 378 (N.D.1974). The circumstances surrounding the present dispute discloses that there was no exchange of consideration between the parties which would support the existence of a contract. While mutual promises may be adequate consideration, the promises exchanged in this instance were not mutual. Memorial Associates promised performance of the purported agreement while, on the other hand, the Directors of Sunset Memorial Gardens merely promised to negotiate further over the proposals of the Plaintiff. By promising to negotiate further, the Debtor did not undergo any legal detriment which could be considered consideration to support the alleged agreement. Without the consideration, the Court must find that no contract exists.

A party may request that a court of equity honor an agreement which exists and which would be honored by a court of law but for some technicality. Specific performance is not an absolute right but is an equitable remedy and, as such, equitable principles must be followed in its use. *Wolf v. Anderson*, 334 N.W.2d 212, 215 (N.D.1983). The Court must analyze whether the "balance of equities" favors the granting of relief. *See Coleman*, 580 F.Supp. at 209. When analyzing whether the equities favor the granting of relief, the Court must consider the following factors:

a) the threat of irreparable harm to the movant;

b) the balance between this harm and the harm that would result to the defendants from granting the injunction; and

c) the public interest.

*Coleman*, 580 F.Supp. at 210. When examining the irreparable harm which the plaintiff would experience without the remedy of specific performance, a court first looks to whether monetary damages will adequately compensate for the damage to the plaintiffs. A party who requests specific performance must initially allege and prove that the legal remedy of damages is inadequate. *Yon v. Great Western Development Corp.*, 340 N.W.2d 43, 46 (N.D.1983). Memorial Associates has not provided the Court any basis for finding that an award of money damages would be inadequate. Not one of the funeral directors who is a joint venturer in this project testified about the harm which it would suffer if the contract were not enforced. Rather, the testimony centered around the future difficulties Sunset Memorial Gardens would suffer if it were not a party to the contract. Basil Walker, President of Sunset, testified that in his mind Sunset would experience greater harm by an award of specific performance than it would if the contract was found unenforceable. The equities in this case do not support an award of specific performance.

2.

In addition to examining the equities of the opposing positions the Court must judge whether enforcement of an award of specific performance would be manageable. Specific performance as an equitable remedy is an extraordinary use

of court power. A party requesting that equitable jurisdiction is held to a higher standard than if he merely asked for money damages for breach of a contract. *Sand,* 224 N.W.2d at 378. Thus, a court will be disinclined to use that extraordinary power if its action would be rendered meaningless by future conduct of the parties. In a bankruptcy case, a trustee or debtor-in-possession is given by statute the power to reject any executory contract of the debtor. *See* 11 U.S.C. § 365. In some instances, a rejection of an executory contract constitutes a breach of such contract. *See* 11 U.S.C. § 365(g). Nevertheless, rejection under section 365(a) of the Bankruptcy Code excuses the debtor from future performance and at most subjects the bankruptcy estate to a monetary obligation of damages. The Court is not, in the present instance, inclined to find an agreement exists which should be enforced when the Debtor may treat that agreement as executory and reject it in bankruptcy proceedings under 11 U.S.C. § 365. In any event, the facts as the Court finds them do not establish the existence of a contract.

Memorial Associates alternatively requests that the Court appoint a trustee with directions to execute the written contract embodying the purported agreement reached with the Debtor. Section 1104 of the Bankruptcy Code provides for appointment of a trustee on request of a party in interest and after a showing of "cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." 11 U.S.C. § 1104. Claims which may be raised by adversary proceeding are limited to those enumerated under Bankruptcy Rule 7001. Generally, a request for appointment of a trustee in a Chapter 11 bankruptcy case is made by motion. Proceeding by motion generally affords all interested parties opportunity to take part in the proceedings. Even if the Court were to find that the issue were properly raised in this instance, Memorial Associates has failed to carry its burden of proof under section 1104 of the Bankruptcy Code. The Plaintiff did establish that Sunset experi-

enced financial losses during the winter months of 1984–85. Nevertheless, the losses were explainable and there is no further proof of any gross mismanagement of the Debtor's affairs by those currently in charge. Thus, it would be inappropriate for the Court to replace the Debtor-in-Possession by a trustee at this point in time.

Accordingly, and for the reasons stated,

IT IS ORDERED:

That the claims for relief raised in the Complaint filed by Memorial Associates, Inc., in this adversary proceeding are DENIED.